Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Eastern District of New York                                    1:19-cv-05913-CBA-SMG

| | |
|---|---|
| Walleta Burke, Sharon Lucky, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>           - against -<br><br>Whole Foods Market Group, Inc.,<br><br>                        Defendant | First Amended Complaint |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.  Whole Foods Market Group, Inc. ("defendant") directs the manufacture, distributes, markets, labels and sells organic vanilla soymilk purporting to be flavored only with vanilla ingredients under its Organic 365 Everyday Value brand ("Product").

2.  The Product is available to consumers from defendant's retail stores and website and is sold in cartons of 32 OZ and 64 OZ.

3.  The relevant front label representations include "Organic 365 Everyday Value,"

1

"Soymilk" and "Vanilla."



4. The representations are misleading because although the characterizing flavor is represented as vanilla, it contains less flavoring from vanilla beans than consumers would expect based on the front label and ingredient list.

5. The representations are misleading because the Product contains vanillin from non-vanilla sources, which is required to be designated as an artificial flavor when used with vanilla and for the front label to disclose it is artificially flavored.

6. The representations are misleading because the Product contains maltol and piperonal, artificial flavors when used with vanilla or by themselves, which enhance and simulate the Product's vanilla taste, but are not disclosed to consumers.

7. The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the flavor

commonly known as vanilla.

8. Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[1]

9. Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[2]

10. Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[3]

11. According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

12. Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[4]

13. Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[5]

14. Label Insight determined that 76% of consumers avoid products with artificial flavors.[6]

15. Flavoring ingredients, especially for products labeled as "vanilla," are typically the most valuable component of a food, and the price of vanilla has reached record highs in recent

---

[1] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").
[2] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.
[3] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[4] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[5] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[6] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

years.[7]

16. Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[8]

17. Attempts at imitating vanilla have frustrated consumers for as long as this flavor has been available.

18. During the first half of the 20th century, "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure'" was rampant, which resulted in consumers expecting vanilla but receiving its synthetic replacement, vanillin, the main molecule in vanilla.[9]

19. To prevent this deception, vanilla became the only flavor to have a standard of identity, to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[10] *See* 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla products); *see also* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity…as published in…21 CFR part 169").[11]

20. The words and statements used to designate a product's characterizing flavor are

---

[7] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.
[8] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[9] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA (the FDA stated, "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards").
[10] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.
[11] 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1; 1. New York State has adopted and incorporated in its entirety, all provisions of the Federal Food, Drug and Cosmetic Act ("FFDCA") through its Agriculture and Markets Law ("AGM") and the accompanying regulations. See Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

required to specify whether the food (i) contains a "characterizing food ingredient, e.g., strawberries in 'strawberry shortcake,'" (ii) how much of the characterizing ingredient is contained, e.g., is it sufficient to independently characterize the food, (iii) natural flavor derived from the characterizing ingredient, e.g., natural strawberry flavor, (iv) contains no natural flavor "from the product whose flavor is simulated," (v) contains natural flavor from sources other than the characterizing flavor which "simulates, resembles or reinforces the characterizing flavor," and (vi) contains "artificial flavor which simulates, resembles or reinforces the characterizing flavor." *See* 21 C.F.R. § 101.22(i).

21. Consumers expect the Product's vanilla taste to only come from vanilla beans because they are accustomed to labels with terms such as "flavored," "artificial flavors" and "with other natural flavors." *See* 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor").

22. Consumers expect this because they are accustomed to seeing labels with terms such as "flavored," "artificial flavors" and "with other natural flavors." *See* 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor").

23. This conclusion is consistent with a consumer survey commissioned by plaintiffs' counsel, finding that over sixty-four (64) percent of consumers expected the Product's vanilla taste "comes from a vanilla plant, such as vanilla extract, which is made from vanilla beans from the vanilla plant." Exhibit "A," Propeller Insights, Non-Dairy Milk Alternatives Study, Survey # 050520-1, May 5, 2020.

24. When asked to consider whether they would be less likely to purchase the Product had they known the vanilla flavoring did not come from the vanilla plant, fifty-five (55) percent agreed. Exhibit "A," p. 4.

25. Contrary to what consumers expect and the law requires, the Product's vanilla taste is provided by flavors other than from the vanilla plant.

26. This is revealed in multiple ways, including the ingredient list showing more non-vanilla "organic natural flavor" than "organic vanilla extract."



**INGREDIENTS:** ORGANIC SOYMILK (FILTERED WATER, ORGANIC SOYBEANS), ORGANIC CANE SUGAR, ORGANIC NATURAL FLAVOR, CALCIUM CARBONATE, SEA SALT, GELLAN GUM ORGANIC VANILLA EXTRACT ORGANIC LOCUST BEAN GUM, VITAMIN A PALMITATE, ERGOCALCIFEROL (VITAMIN D2), RIBOFLAVIN (VITAMIN B2), CYANOCOBALAMIN (VITAMIN B12).

27. The Product's front label includes no reference to any non-vanilla flavors, which is false, deceptive and misleading because these flavors enhance, resemble, simulate, reinforce and extend the "complex array of flavor notes and aromas" by providing, among other things, creamy, sweet and vanilla-like notes.[12]

28. This is concluded through gas chromatography-mass spectrometry ("GC-MS") analysis, which identified the Product's flavor compounds by matching their mass to charge ratio (m/z ratio) with a database of virtually all known flavor compounds. Exhibit "B," GC-MS Report,

---

[12] Vanilla, Taste Foundations, Virginia Dare Company.

July 15, 2020.

## Peak Assignment Table

Table 1

Sheehan & Associates, P.C., Project #7720
Whole Foods 365 Organic Vanilla Soymilk
Production Code: 0066P8FKA
Methylene Chloride Extract of 10.0 g with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS

Data File = TSQA4201

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 10 | 38204 | diacetyl | 0.0075 |
| 109 | 137372 | acetic acid | 0.0270 |
| 184 | 26171 | acetol | 0.0052 |
| 187 | 29728 | 3-methylbutanal | 0.0059 |
| 237 | 1206300 | acetoin | 0.2374 |
| 308 | 20814 | butyric acid | 0.0041 |
| 315 | 5236 | 2,3-dihydro-4-methylfuran | 0.0010 |
| 336 | 266658 | hexanal | 0.0525 |
| 361 | 67880 | 2-butenoic acid | 0.0134 |
| 377 | 23919 | methyl pyrazine | 0.0047 |
| 411 | 16972 | furfuryl alcohol | 0.0033 |
| 426 | 56405 | hexyl alcohol + pentanoic acid | 0.0111 |
| 453 | 8820 | 2-heptanone | 0.0017 |
| 470 | 19073 | heptanal | 0.0038 |
| 484 | 22955 | dimethyl sulfone | 0.0045 |
| 491 | 29291 | 2,5-dimethylpyrazine | 0.0058 |
| 547 | 146203 | hexanoic acid | 0.0288 |
| 559 | 205102 | benzaldehyde + phenol | 0.0404 |
| 568 | 16564 | 6-methyl-5-hepten-2-one | 0.0033 |
| 577 | 57668 | 2-pentylfuran | 0.0113 |
| 586 | 15177 | 2,4-heptadienal | 0.0030 |
| 591 | 30007 | octanal | 0.0059 |
| 597 | 20506 | C3 alkyl pyrazine | 0.0040 |
| 604 | 38785 | 2,4-heptadienal + 1H-pyrrole-2-carboxaldehyde | 0.0076 |
| 622 | 56561 | cyclotene | 0.0111 |
| 630 | 22889 | benzyl alcohol | 0.0045 |
| 640 | 672004 | N-methylpyrrolidinone (NMP) | 0.1322 |
| 654 | 60547 | trans-2-octenal | 0.0119 |
| 659 | 67053 | heptanoic acid | 0.0132 |
| 662 | 94685 | 2-acetyl pyrrole | 0.0186 |
| 667 | 14044 | p-cresol | 0.0028 |
| 694 | 2949972 | guiaicol | 0.5805 |
| 701 | 331865 | nonanal | 0.0653 |
| 724 | 56607916 | maltol | 11.1403 |
| 760 | 739849 | octanoic acid | 0.1456 |
| 765 | 59839 | benzoic acid | 0.0118 |
| 801 | 225979 | 2-methoxy-4-methylphenol | 0.0445 |
| 805 | 88378 | decanal | 0.0174 |
| 817 | 5081347 | naphthalene-d8 (internal standard) | 1.0000 |
| 851 | 271586 | nonanoic acid | 0.0534 |
| 866 | 459007 | gamma-octalactone | 0.0903 |
| 874 | 6064 | p-methoxybenzaldehyde (p-anisaldehyde) | 0.0012 |
| 896 | 92553 | 2,4-decadienal + 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0182 |
| 910 | 167982 | ? 140 mw | 0.0331 |
| 920 | 406864 | 2,4-decadienal | 0.0801 |
| 930 | 68336 | N-phenyl formamide | 0.0134 |
| 937 | 47662 | 2,3,5,6-tetramethyl-p-benzoquinone | 0.0094 |
| 943 | 414572 | decanoic acid | 0.0816 |
| 961 | 29144722 | piperonal | 5.7356 |
| 974 | 241954 | ethyl decanoate | 0.0476 |
| 1022 | 109008320 | vanillin | 21.4526 |
| 1031 | 30662 | geranyl acetone | 0.0060 |
| 1038 | 64189 | methyl paraben | 0.0126 |
| 1049 | 199647 | vanillyl ethyl ether | 0.0393 |
| 1059 | 313632 | gamma-decalactone | 0.0617 |
| 1079 | 46140 | acetovanillone | 0.0091 |
| 1095 | 7761 | delta-decalactone | 0.0015 |
| 1101 | 50482 | vanillyl acetate | 0.0099 |
| 1110 | 31413 | lauric acid | 0.0062 |
| 1139 | 100211 | ethyl laurate | 0.0197 |
| 1211 | 40618 | syringealdehyde | 0.0080 |
| 1269 | 14856 | myristic acid | 0.0029 |
| 1461 | 63273 | palmitic acid | 0.0125 |
| 1496 | 32416 | ethyl palmitate | 0.0064 |
| 1629 | 45143 | methyl linoleate | 0.0089 |
| 1640 | 23043 | methyl oleate | 0.0045 |
| 1743 | 50278 | ethyl linoleate | 0.0099 |
| 1758 | 25811 | ethyl oleate | 0.0051 |
| | | Total (excluding internal standard) | 40.53 |

7

29. Based on the Peak Assignment Table, the Product's vanilla taste is supplied by the components of the "Organic Natural Flavor," which includes maltol (MS Scan # 724, 11.1403 PPM), piperonal (MS Scan # 961, 5.7356 PPM) and vanillin (MS Scan # 1022, 21.4526 PPM).

30. Maltol is an artificial flavor, used to enhance the flavor of vanilla by increasing a food's sweetness. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[13]

31. Maltol "can help to smooth authentic style vanilla bean flavors" at modest levels.[14]

32. Though maltol has been detected in vanilla extract at low levels, between 0.004 and 0.01 PPM, its presence in the Product at 11.1403 PPM (MS Scan # 724) means it is part of the "Organic Natural Flavor."

33. The Product contains piperonal (heliotropine), 5.7356 PPM (MS Scan # 961, an artificial flavor compound not found in vanilla. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[15]

34. Piperonal contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste" and imparts "vanilla flavors to food and beverage products."[16]

35. The Product also contains "an abnormal excess of vanillin [MS Scan # 1022, 21.4526 PPM] relative to the profile of minor components in a vanilla preparation," such as vanillyl ethel ether (MS Scan # 1049, 0.0393 PPM).[17]

36. This ratio, over 545, greatly exceeds the ratio of 27.24 detected in vanilla extract based on the proportion of vanillin (MS Scan # 759, 77.4301 PPM) to vanillyl ethel ether (MS

---

[13] 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants."); Maltol, UL Prospector, Bryan W Nash & Sons Ltd.
[14] John Wright, Flavor Bites: Maltol, Perfumer & Flavorist, June 2020.
[15] 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants."); C. B. Gnadinger, "Piperonal in Vanilla Extract." Industrial & Engineering Chemistry 18.6 (1926): 588-589.
[16] Piperonal, Moellhausen S.p.A., UL Prospector.
[17] Sinha at 319-20 ("Adulteration can be detected chromatographically by an abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation, but again the possibility is there to manipulate this profile artificially.").

Scan #809, 2.8421 PPM). Exhibit "C," Table 2, Peak Assignment Table for Simply Organic Madagascar Pure Vanilla Extract.

37. The Product's ingredient list fails to clarify any front label ambiguity because even though "organic vanilla extract" is listed, its contribution to the Product's vanilla taste is less than the front label would have consumers believe.

38. This is because main components of vanilla extract consist of "water, alcohol and vanilla bean extractives."[18] 21 C.F.R. § 169.175(a).

39. The amount of vanillin – the principal flavoring component of vanilla – in vanilla extract ranges "from 0.2 g per 100mL (0.2%) for a good quality extract to less than 0.02 g per 100mL (0.02%) for inferior quality product."[19]

40. Based on the ingredient listing of "organic vanilla extract" and the "organic natural flavor" which includes vanillin, maltol and piperonal, it would appear the front label should contain the statement "With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) ("If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words 'with other natural flavor'").

41. However, the "WONF" requirement is not applicable because the Product's characterizing flavor is vanilla, which means the vanilla standards take precedence over the general flavor regulations when they conflict. *Compare* 21 C.F.R. § 101.22 with 21 C.F.R. § 169.175-182.

---

[18] Bakto Flavors, https://www.baktoflavors.com/how-to-buy-vanilla-extract
[19] Arvind S. Ranadive, Quality control of vanilla beans and extracts (pp. 141-161) in Handbook of Vanilla Science and Technology, Havkin-Frenkel, Daphna, and Faith C. Belanger, eds., Hoboken, NJ, Blackwell Publishing, 2011.

42. According to representatives of FEMA:

> The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a)(3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.
>
> John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

43. Even though the ingredient list contains "organic vanilla extract" separately from "organic natural flavor," federal and state regulations recognize the relationship of these two ingredients.

44. For instance, when vanillin (from non-vanilla sources) and vanilla are combined, the ingredient list is required to state "'contains vanillin, an artificial flavor (or flavoring).'" *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract").

45. The Product's use of vanillin, piperonal and maltol ("organic natural flavor") with vanilla ("organic vanilla extract") requires the front label to disclose "artificial (vanilla) flavor." *See* Exhibit "D," Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized product and should therefore be labeled artificial or imitation.").

46. Defendant's Vanilla Soymilk, "containing vanillin derived from a non vanilla bean source needs to be labeled as artificially flavored [because] the food is characterized/labeled as vanilla flavored." Exhibit "E," FDA, Letter, Margaret-Hanna Emerick to Richard Brownell, February 25, 2016; *see* 21 C.F.R. § 101.22(i)(2) (requiring a food that "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor" to be labeled "artificially

flavored").

47. Including vanillin and other vanilla enhancing flavors as part of the "Organic Natural Flavor" is misleading because it fails to disclose that these flavors are required to be designated as artificial flavors when paired with vanilla.

48. A reasonable consumer cannot follow up or learn the truth that the Product contains non-vanilla artificial flavors, including vanillin from non-vanilla sources, from reading the Product's ingredient list because defendant labels this flavor as "Organic Natural Flavor" and fails to provide clarification elsewhere on the Product.

49. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiffs and consumers.

50. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiffs.

51. The value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

52. Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

53. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.99 for cartons of 32 OZ and $5.49 for 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

54. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

55. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

56. Plaintiff Walleta Burke is a citizen of New York.

57. Plaintiff Sharon Lucky is a citizen of New York.

58. Defendant Whole Foods Market Group, Inc. is an corporation with a principal place of business in Austin,  County,  and therefore is a citizen of .

59. "Minimal diversity" exists because plaintiff Burke and defendant are citizens of different states.

60. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision to purchase the Product and the misleading representations and/or their recognition as such by Plaintiff Burke, occurred in this district.

61. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

62. Plaintiff Walleta Burke is a citizen of Kings County, New York.

63. Plaintiff Sharon Lucky is a citizen of New York County, New York.

64. Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Texas, Travis County.

65. Defendant owns and operates approximately 500 stores nationwide which sell high-value groceries to consumers.

66. Defendant also distributes and sells its Products through its website and its parent company, Amazon.com, Inc.

67. During the relevant statutes of limitations, plaintiffs purchased the Product within their district and/or State for personal consumption and/or use in reliance on the representations the Product's flavor contained only vanilla flavoring from vanilla beans and was not enhanced by non-vanilla flavors including artificial flavors.

68. Plaintiff Walleta Burke purchased defendant's Organic 365 Vanilla Soymilk throughout 2018 at Whole Foods, 4 Union Square E S, New York, NY 10003.

69. Plaintiff Sharon Lucky purchased defendant's Organic 365 Vanilla Soymilk during 2019, including on or around November 20, 2019 at Whole Foods, 100 W 125th St, New York, NY 10027.

70. Plaintiffs bought the Product because they liked the product type for its intended use and expected its vanilla flavor to not be enhanced by non-vanilla flavors and artificial flavors, because the front label did not disclose this nor was it clarified by the ingredient list.

71. Plaintiffs intend to buy the Product again if it was reformulated to contain flavor only from vanilla or if it is labeled accurately to reflect its contents.

## Class Allegations

72. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

73. Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

74. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

75. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

76. Plaintiffs are adequate representatives because their interests do not conflict with other members.

77. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

78. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

79. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

80. Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

81. Plaintiffs incorporate by reference all preceding paragraphs.

82. Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

83. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

84. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

85. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

86. The ingredient list declaration of "organic natural flavor" fails to tell consumers and plaintiffs that the Product contains added vanillin, from non-vanilla sources, which is required to be designated as an artificial flavor on the ingredient list and make the front label disclose "artificially flavored."

87. Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

88. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

89. Plaintiffs incorporate by reference all preceding paragraphs.

90. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

91. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

92. The ingredient list declaration of "organic natural flavor" fails to tell consumers and plaintiffs that the Product contains added vanillin, from non-vanilla sources, which is required to be designated as an artificial flavor on the ingredient list and make the front label disclose "artificially flavored."

93. Defendant had a duty to disclose and/or provide non-deceptive marketing of the

Product and knew or should have known same were false or misleading.

94. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

95. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

96. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

97. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

98. Plaintiffs incorporate by reference all preceding paragraphs.

99. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

100. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

101. The ingredient list declaration of "organic natural flavor" fails to tell consumers and plaintiffs that the Product contains added vanillin, from non-vanilla sources, which is required to be designated as an artificial flavor on the ingredient list and make the front label disclose "artificially flavored."

102. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

103. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

104. Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

105. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

106. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

107. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

108. Plaintiffs incorporate by reference all preceding paragraphs.

109. The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect that non-vanilla, artificial flavors where a product is labeled "vanilla" without more.

110. The ingredient list declaration of "organic natural flavor" fails to tell consumers and plaintiffs that the Product contains added vanillin, from non-vanilla sources, which is required to be designated as an artificial flavor on the ingredient list and make the front label disclose "artificially flavored."

111. Defendant's fraudulent intent is evinced by its failure to accurately identify the

17

Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

112. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

113. Plaintiffs incorporate by reference all preceding paragraphs.

114. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 17, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

19

1:19-cv-05913-CBA-SMG
United States District Court
Eastern District of New York

Walleta Burke, Sharon Lucky, individually and on behalf of all others similarly situated,

             Plaintiffs,

 - against -

Whole Foods Market Group, Inc.,

             Defendant

First Amended Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd Ste 311
  Great Neck NY 11021-5101
     Tel: (516) 303-0552
     Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: July 17, 2020

                     /s/ Spencer Sheehan
                     Spencer Sheehan