## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

WALLETA BURKE and SHARON LUCKY,
individually and on behalf of all others
similarly situated,

                         Plaintiffs,

        -against-

WHOLE FOODS MARKET GROUP, INC.,

                         Defendant.

Case No.: 1:19-cv-05913-CBA-SMG

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Brian R. Blackman (admitted *pro hac vice*)
bblackman@blaxterlaw.com
David P. Adams (admitted *pro hac vice*)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Tel: (415) 500-7700

*Attorneys for Defendant Whole Foods
Market Group, Inc.*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................3

III.   ARGUMENT .......................................................................................................4

     A.    Legal Standards.....................................................................................4

     B.    Plaintiffs' Claim for False and Misleading Advertising Fail as a
Matter of Law. ......................................................................................4

          1.    The "Vanilla" Statement on 365 Soymilk's Front Label Is Not
Misleading to Reasonable Consumers. ......................................5

               a.    Because 365 Soymilk Contains Vanilla Extract, Its Label
Is Not Materially Misleading ...........................................7

               b.    Any Ambiguity in the 365 Soymilk Label May Be Resolved
by Consulting the Ingredient List. ...................................8

          2.    Plaintiffs' Claims of Misrepresentation Lack Substance and Factual
Support.......................................................................................9

               a.    Plaintiffs' Gas Chromatography Analysis Is Unreliable. ..............10

               b.    Plaintiffs' Consumer Survey Is Materially Flawed and
Biased...............................................................................11

          3.    Plaintiffs Cannot Privately Enforce Alleged Violations of the FDCA......12

          4.    The 365 Soymilk Label Complies with Federal Regulations and
Plaintiffs' Attempt to Impose Additional Requirements Is
Preempted. ...............................................................................15

               a.    365 Soymilk Is Properly Labeled "Vanilla.". ...............15

               b.    The Use of "Organic Natural Flavors" in the Ingredients
List Does Not Violate FDCA Regulations.....................16

5.    Plaintiffs Have Not Alleged an Injury Under GBL Sections 349 and 350. ...........................................................................17

C.    Plaintiffs Lack Standing to Pursue Injunctive Relief. ...............................17

D.    The FAC Fails to State a Claim for Fraud. ...............................................18

E.    Plaintiffs' Negligent Misrepresentation Claim Fails. ...............................19

1.    Plaintiffs Fail to Allege a "Special Relationship." ......................19

2.    Plaintiffs' Negligent Misrepresentation Claim Cannot Survive When Plaintiffs Only Allege Economic Losses. ...........................20

F.    Plaintiffs' Express and Implied Warranty and Magnuson-Moss Warranty Act Claims Should Be Dismissed. ...........................................................21

1.    Plaintiffs Failed to Comply with New York's Pre-Suit Notice Requirement. ................................................................................21

2.    Plaintiffs Fail to Allege the Product Was Not Merchantable and Their Implied Warranty Claim Fails ............................................21

3.    Plaintiffs' MMWA Claim Fails Because They Do Not Allege an Actionable Written Warranty and the Claim Duplicates Their Other Claims ........................................................................................22

G.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed as Duplicative. .........23

IV.    CONCLUSION ....................................................................................................24

## TABLE OF AUTHORITIES

### STATE CASES

*Corsello v. Verizon N.Y., Inc.*
967 N.E.2d 1177 (N.Y. 2012) ............................................................... 23

*Hammer v. Am. Kennel Club*
803 N.E.2d 766 (2003) ........................................................................ 12

*Kimmel v. Schaefer*
675 N.E.2d 450 (N.Y. 1996) ............................................................... 19

*Koch v. Acker, Merrall & Condit Co.*
967 N.E.2d 675 (N.Y. 2012) ................................................................. 5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*
85 N.Y.2d 20 (N.Y. 1995) ..................................................................... 5

### FEDERAL CASES

*Ackerman v. Coca-Cola Co.*
No. 09-cv-0395-JG, 2010 WL 2925955 (E.D.N.Y. Jul. 21, 2010) .................... 22

*Am. Civ. Liberties Union v. Clapper*
785 F.3d 787 (2d Cir. 2015) ............................................................... 18

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................. 4

*Belfiore v. Proctor & Gamble Co.*
311 F.R.D. 29 (E.D.N.Y. 2015) ............................................................. 8

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................. 4

*Bowling v. Johnson & Johnson*
65 F. Supp. 3d 371 (S.D.N.Y. 2014) .................................................... 22

*Broder v. Cablevision Sys. Corp.*
418 F.3d 187 (2nd Cir. 2005) ............................................................. 12

*Buckman Co. v. Plaintiffs' Legal Comm.*
531 U.S. 341 (2001) ........................................................................... 13

*Campbell v. Freshbev LLC*
322 F. Supp. 3d. 330 (E.D.N.Y. 2018) ............................................... 7, 8

*Carmania Corp., N.V. v. Hambrecht Terrell Int'l*
705 F. Supp. 936 (S.D.N.Y. 1989) ...................................................... 20

*Chufen Chen v. Dunkin' Brands, Inc.*
  No. 17-cv-3808-CBA-RER, 2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018) ................... 22

*Cohen v. JP Morgan Chase & Co.*
  498 F.3d 111 (2nd Cir. 2007) ........................................................................................ 5

*Cohen v. S.A.C. Trading Corp.*
  711 F.3d 353 (2d Cir.2013) ........................................................................................ 18

*Colella v. Atkins Nutritional, Inc.*
  348 F. Supp. 3d 120 (E.D.N.Y 2018) .................................................................. 17, 21

*Daniel v. Mondelez Int'l, Inc.*
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................. 14, 17

*Davis v. Hain Celestial Grp., Inc.*
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ............................................................. 5, 7, 8, 9

*EED Holdings v. Palmer Johnson Acquisition Corp.*
  387 F. Supp. 2d 265 (S.D.N.Y. 2004) .......................................................................... 20

*Elkind v. Revlon Consumer Prod. Corp.*
  No. 14-cv-2484-JS-AKT, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ........................ 20

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*
  400 F. App'x 611 (2d Cir. 2010) ................................................................................ 23

*Fink v. Time Warner Cable*
  714 F.3d 739 (2d Cir. 2013) ...................................................................................... 5, 8

*Gordon v. Hain Celestial Grp., Inc.*
  No. 16-cv-6526-KBF, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ................................. 20

*Green v. SweetWorks Confections, LLC*
  No. 18-cv-902-LTS-SN, 2019 WL 3958442 (S.D.N.Y. Aug. 21, 2019) ..................... 17, 18

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*
  No. 12-md-2413-RRM-RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ....... 18, 19, 22

*In re: Gen. Motors LLC Ignition Switch Litig.*
  No. 14-mc-2543-JMF, 2016 WL 3920353 (S.D.N.Y. July 15, 2016) .............................. 23

*In re Trader Joe's Tuna Litig.*
  289 F. Supp.3d 1074 (S.D. Cal. 2017) ....................................................................... 13

*Izquierdo v. Mondelez Int'l, Inc.*
  No. 16-CV-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .......................... 17, 23, 24

*Koenig v. Boulder Brands, Inc.*
  995 F.Supp.2d 274 (S.D.N.Y. 2014) .......................................................................... 17

*L.A. v. Lyons*
  461 U.S. 95 (1983) ..................................................................................................... 17

*Mantikas v. Kellog Co.*
    910 F.3d 633 (2d Cir. 2018)..................................................................................... 5

*Melendez v. One Brands*
    No. 18-cv-06650-CBA-SJB, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ....... 5, 9, 21, 23

*N.A. Olive Oil Ass'n v. Kangadis Food, Inc.*
    962 F. Supp. 2d 514 (S.D.N.Y. 2013).................................................................... 6

*Nelson v. MillerCoors, LLC*
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) .................................................................. 19

*Nicosia v. Amazon.com, Inc.*
    834 F.3d 220 (2d Cir. 2016)................................................................................... 17

*Orlander v. Staples, Inc.*
    802 F.3d 289 (2d Cir. 2015)................................................................................5, 17

*Patane v. Nestle Waters North America, Inc.*
    314 F. Supp. 3d 375 (D. Conn. 2018).................................................................... 13

*PDK Labs, Inc. v. Friedlander*
    103 F.3d 1105 (2d Cir. 1997)................................................................................ 12

*Quinn v. Walgreen Co.*
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) .................................................................. 21

*Reyes v. Crystal Farms Refrigerated Distribution Co.*
    No. 18-cv-2250-NGG-RML, 2019 WL 3409883 (E.D.N.Y. July 26, 2019).............. 8, 9, 14

*Sarr v. BEF Foods, Inc.*
    No. 18-cv-6409-ARR-RLM, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) 7-9, 14, 18-19, 23

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*
    60 F. Supp. 3d 331 (E.D.N.Y. 2014) .................................................................... 18

*Silva v. Smucker Nat. Foods, Inc.*
    No. 14-cv-6154-JG-RML, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ................. 21, 22

*Singleton v. Fifth Generation, Inc.*
    No. 15-cv-474-BKS-TWD, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)......................... 21

*Solak v. Hain Celestial Grp., Inc.*
    No. 17-cv-0704-LEK-DEP, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018).................. 7, 13

*Steele v. Wegmans Food Markets, Inc.*
    No. 19-cv-9227-LLS, 2020 WL 3975461 (S.D.N.Y. Jul. 14, 2020) .................6-11, 13, 14

*Stolz v. Fage Dairy Processing Indus.*
    2015 WL 5579872 (E.D.N.Y Sept. 22, 2015) .................................................... 20

*Verzani v. Costco Wholesale Corp.*
    No. 09-cv-2117-CM, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010).......................... 12, 13

*Wilbur v. Toyota Motor Sales, U.S.A., Inc.*
    86 F.3d 23 (2d Cir. 1996)..................................................................22

## STATUTES & REGULATIONS

15 U.S.C. § 2301(6)(A).......................................................................22

21 C.F.R. § 101.22.............................................................................16

21 C.F.R. § 101.4(b)..........................................................................16

21 C.F.R. § 101.22(a)(3)....................................................................16

21 C.F.R. § 101.22(h)........................................................................16

21 C.F.R. § 101.22(h)(1)....................................................................16

21 C.F.R. § 182.10.............................................................................16

21 U.S.C. § 337(a)........................................................................12, 13

21 U.S.C. § 343(g).............................................................................15

Fed. R. Civ. P. 9(b)......................................................................2, 18, 19

N.Y. Gen. Bus. Law § 349...........................................................4, 13, 14, 17

N.Y. Gen. Bus. Law § 350...........................................................4, 13, 14, 17

N.Y. U.C.C. Law § 2-607(3)(a)................................................................21

## I.      INTRODUCTION

Defendant Whole Foods Market Group, Inc. ("WFM Group") sells Organic 365 Everyday Value Soymilk - Vanilla ("365 Soymilk"), at Whole Foods Market stores in New York state and other states across the country.  The product's front label reads "Organic Soymilk - Vanilla - Soymilk Beverage," the back-label lists both "Organic Natural Flavor" and "Organic Vanilla Extract" as ingredients.  The use of the term "vanilla" on the front label describes what the 365 Soymilk tastes like, not its ingredients.

Plaintiffs Walleta Burke and Sharon Lucky (collectively "Plaintiffs") allege that the use of "vanilla" on the front label is misleading because it leads consumers to believe the product's flavor comes exclusively from natural vanilla extract and no other flavoring ingredient(s).  Plaintiffs make these allegations even though they admit 365 Soymilk is, in fact, flavored at least in part with real vanilla extract and its packaging does not affirmatively claim that its flavoring is "exclusively," "purely," or "100%" derived from vanilla beans.  Based on the alleged deception, Plaintiffs bring claims for violations of New York General Business Law ("GBL") Sections 349 and 350, negligent misrepresentation, breaches of express and implied warranty and violations of the Magnuson-Moss Warranty Act, fraud, and unjust enrichment.  Each of these claims lacks merit which is why several other New York federal district courts have dismissed almost identical claims in the last couple of years.

The weight of Plaintiffs' allegations focuses on accusations that WFM Group violated the Food, Drug & Cosmetic Act ("FDCA").  Plaintiffs, however, misinterpret and mischaracterize the regulations under the statute and rely on old non-binding correspondence from the Food and Drug Administration ("FDA") to argue the product's label is misleading.[1]  Plaintiffs' liability theory fails for the straightforward reasons that there is no private right of action under the FCDA and, even if there were, the 365 Soymilk's labeling complies with the applicable

---

[1]  Plaintiff's strategy in this case, and the more than 50 other vanilla labeling cases counsel has filed, is to grab onto what they perceive is a technical violation of the FDCA and then hold up defendants for expensive settlements.

regulations.  Plaintiffs' FDCA allegations also fail because the First Amended Complaint ("FAC") does not allege a sufficient basis to conclude that consumers interpret the term "vanilla" on a soymilk label consistent with Plaintiffs' idiosyncratic reading of a complex web of FDCA flavoring regulations.

More to the point, common sense dictates that the term "vanilla" on the front label of a soymilk beverage communicates to consumers that the product tastes like vanilla, not that it is made with a specific ingredient.  Reasonable consumers do not perceive the word "vanilla" to mean that soymilk is exclusively flavored by vanilla bean extract.  Rather, the vanilla statement differentiates between other types of soymilk, including original and unsweetened.  Plaintiffs do not dispute that 365 Soymilk actually contains organic vanilla extract in addition to other natural flavors, and any ambiguity from the use of "vanilla" on the front label, of which there is none, would be dispelled by reviewing the ingredients list.  Thus, Plaintiff's liability theory is unreasonable because it requires that the simple term "vanilla" communicates to a majority of consumers that *all* of the product's flavoring comes exclusively from vanilla extract.   Plaintiffs' state law deception claims also fail because Plaintiffs do not allege facts showing they were injured by paying a price premium for their 365 Soymilk.

The FAC includes several other claims that should all be dismissed for the same reasons as their core false advertising claims and, in the alternative, because Plaintiffs have not and cannot plead the necessary elements for each of those claims.  Plaintiffs' fraud claim fails to comply with Rule 9(b)'s heightened pleading standards by, among other things, failing to plead the requisite fraudulent intent.  Plaintiffs' negligent misrepresentation claim fails to plead the requisite special relationship between WFM Group and Plaintiffs, and is barred by the economic loss doctrine.   Plaintiffs' breach of warranty claims should be dismissed because Plaintiffs did not provide WFM Group with the requisite pre-suit notice, fail to allege the 365 Soymilk was inedible or otherwise not merchantable and fail to identify a written warranty subject to the Magnuson-Moss Warranty Act ("MMWA").  Finally, Plaintiffs' unjust enrichment claim should

be dismissed because it is duplicative of their other claims and Plaintiffs already have an adequate remedy at law.

## II.    FACTUAL BACKGROUND

WFM Group owns and operates Whole Foods Market stores in New York and several other states.  (FAC, Dkt. No. 16 at ¶¶64-65.)  WFM Group markets and sells a variety of food and beverage products under the private label brand "365 Everyday Value," including a soymilk beverage labeled "Organic Soymilk – Vanilla - Soymilk Beverage."  (*Id.* at ¶¶1-3.)  WFM Group sells an original, vanilla and unsweetened version of this soymilk beverage.  As a retailer, WFM Group does not manufacture the private label soymilk beverages, but obtains them from a supplier.

Plaintiffs allege they purchased the vanilla soymilk beverage from a Whole Food Market store in New York throughout 2018 and during 2019.  (FAC ¶¶68-69.)  Plaintiffs claim the use of the term "vanilla" on the front label is misleading because it leads consumers to believe that 365 Soymilk "contain[s] only vanilla flavoring from vanilla beans and [is] not enhanced by non-vanilla flavors including artificial flavors."[2]  (FAC ¶67.)  Plaintiffs admit 365 Soymilk contains, at least in part, vanilla flavoring from vanilla beans (i.e., vanilla extract) as referenced in the product's ingredient list.  (FAC at ¶¶4, 26.)  They also admit that the product's ingredient list discloses the presence of "Organic Natural Flavors."  (FAC ¶¶25-26.)  Further, the 365 Soymilk label does not state that the product's vanilla flavor is derived "only," "entirely," "exclusively" or "100%" from vanilla beans.  (FAC¶¶4, 26.)  Still, Plaintiffs contend that the affirmative "vanilla" statement on the front label misrepresents the "substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product."  (FAC ¶¶84, 90.)

Plaintiffs do not allege how much they paid, or if they paid a range of prices, for their 365 Soymilk or what other stores charge for a similar product.  (*Id.* at ¶¶62-70.)  Plaintiffs do allege

---

[2]  Plaintiffs rely on a flawed consumer survey to establish this alleged consumer understanding.  (*See* FAC ¶23; *see also* Exhibit A to FAC, Dkt. 16-1.)  As discussed in greater detail below, the consumer survey is biased and unreliable.

that the value of 365 Soymilk was less than the value as represented, and that the product is sold at a premium of $3.99 for the 32 oz carton and $5.49 for the 64 oz carton compared to similar products.  (*Id.* at ¶53.)  Plaintiffs' price premium allegations, however, are suspect given that, according to the Whole Foods Market website, both sizes of the product retail at Whole Foods Market for less than $3.00.  Plaintiff allege they will not buy 365 Soymilk again, as currently formulated (FAC ¶71), but nonetheless seek injunctive relief.  (FAC ¶¶73, 80 & p. 18 ¶¶2-3.)

## III.    ARGUMENT

### A.    Legal Standards

A court should grant a motion to dismiss when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When ruling on a motion to dismiss, a court must accept factual allegations pleaded in the complaint as true, but it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a . . . claim are not entitled to an assumption of truth"), quoting *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it 'tenders naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and plausibility of entitlement to relief.'" *Id*., quoting *Twombly*, 550 U.S. at 557.  Casting aside "conclusory statements," the remaining factual allegations in a complaint must do more than "create[] a suspicion of a legally cognizable right of action," they must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. 544, 555 (2007).  In making this "context-specific" determination, the Court must draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.    Plaintiffs' Claims for False and Misleading Advertising Fail as a Matter of Law.

GBL sections 349 and 350 require Plaintiffs "allege that [WFM Group] has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered

injury as a result of the allegedly deceptive act or practice.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)).  As to the second element, Plaintiffs must show that "a reasonable consumer acting reasonably under the circumstances" would be misled.  *Mantikas v. Kellog Co.*, 910 F.3d 633, 636 (2d Cir. 2018).  A court may determine, as a matter of law, that an allegedly deceptive practice does not mislead a reasonable consumer.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiffs' claims for false and misleading advertising fail for several reasons.  First, the use of "vanilla" on the 365 Soymilk's front label is not misleading to a reasonable consumer.  Second, Plaintiffs' claims of misrepresentation lack substance and factual support.  Third, Plaintiffs cannot privately enforce alleged violations of federal regulations under the FDCA.  Fourth, the 365 Soymilk's label complies with federal regulations and Plaintiffs' attempt to impose additional requirements is preempted.  Finally, Plaintiffs have not alleged an injury sufficient to establish their false advertising claims.

### 1.    The "Vanilla" Statement on 365 Soymilk's Front Label Is Not Misleading to Reasonable Consumers.

"To survive a motion to dismiss, plaintiff must allege statements that were 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (N.Y. 1995)).  Courts use "an objective inquiry" to determine if a statement would be likely to mislead reasonable consumers.  *Melendez v. One Brands*, No. 18-cv-06650-CBA-SJB, 2020 WL 1283793, *6 (E.D.N.Y. Mar. 16, 2020) (citing *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2nd Cir. 2007)).

The term "vanilla," as it appears on the 365 Soymilk's front label (i.e., "Organic Soymilk – Vanilla – Soymilk Beverage"), is not objectively misleading to a reasonable consumer because it refers to the product's taste, not to its ingredients.  A reasonable consumer would read the

flavor indicator "vanilla" and conclude the product tastes like vanilla, as opposed to chocolate, plain or unflavored soymilk.  It is unreasonable to believe that the average consumer would read "vanilla" and conclude the taste necessarily derives exclusively from a specific ingredient, i.e., vanilla bean extract.  Moreover, reasonable consumers do not have the detailed knowledge of the FDA's flavor labeling regulations and historical regulatory correspondence necessary to interpret, albeit incorrectly, the term "vanilla" as the Plaintiffs do here.  *See N.A. Olive Oil Ass'n v. Kangadis Food, Inc.*, 962 F. Supp. 2d 514, 519-21 (S.D.N.Y. 2013) (plaintiffs have not demonstrated "the perceptions of ordinary consumers align with [the] labeling standards …").

In fact, the Southern District recently dismissed similar "vanilla" claims in *Steele v. Wegmans Food Markets, Inc.*, No. 19-cv-9227-LLS, 2020 WL 3975461, at *1 (S.D.N.Y. Jul. 14, 2020); a case brought by the same counsel that filed this action alleging Wegman's vanilla ice cream label was false and misleading because consumer believed the statement "No Artificial Colors, Flavors or Preservatives… Made with Milk, Cream, and Natural Vanilla Flavor" meant the ice cream only got its vanilla flavor from vanilla extract, when in fact the ice cream got most of its vanilla flavor from some non-vanilla source.  *Ibid.*  Judge Louis Stanton granted defendant's motion to dismiss, concluding the label was not misleading because there was nothing on the front label promising the product's vanilla flavor derived from vanilla beans or vanilla extract.  *Id.* at *2-3. The ice cream advertised natural vanilla flavor and delivered on this promise.

The reasoning applied in *Steele* applies with equal force to the present matter.  The 365 Soymilk label promises the product will taste like vanilla; it does not promise a specific vanilla ingredient.  Reasonable consumers do not interpret the "vanilla" flavor statement on the product's packaging as an ingredient claim or as a promise that the vanilla flavor they taste comes exclusively from a single botanical source.  Consumers got what they paid for – vanilla flavored soymilk.  As the *Steele* court rhetorically questioned: "What is misrepresented?"  *Steele,* 2020 WL 3975461, at *2.  The answer here is the same as in *Steele*: nothing.

Even if the use of "vanilla" on the front label could somehow be confused for a claim that the product is flavored by vanilla extract, Plaintiffs' false advertising claims would still fail for two reasons:  (i) 365 Soymilk actually contains vanilla extract; and (ii) the ingredient list discloses the presence of organic natural flavors and organic vanilla extract.

> ### a.  Because 365 Soymilk Contains Vanilla Extract, Its Label Is Not Materially Misleading

Assuming, for the sake of argument, that the use of "vanilla" on the front label does somehow convey a specific ingredient claim, the 365 Soymilk label is still not materially misleading because the product actually contains vanilla extract.  Plaintiffs admit this fact in the FAC.  (*See* FAC ¶26.)  Thus, their theory of liability and misrepresentation goes beyond merely including vanilla extract in the product to contend that consumers expect a particular *proportion* of vanilla extract to other flavoring ingredients.  (FAC ¶¶4, 37.)  The FAC, however, does not allege any factual basis for such an unreasonable interpretation of the word "vanilla."

Although courts have shown some historical hesitation in dismissing false advertising cases at the pleading stage, New York federal district courts have routinely held that a labeling claim is not materially misleading when the product contains the ingredient identified on the label, even when present alongside other ingredients or attributes.  *See, e.g., Steele*, 2020 WL 3975461, at *2-3; *Solak v. Hain Celestial Grp., Inc.*, No. 17-cv-0704-LEK-DEP, 2018 WL 1870474, at *3–9 (N.D.N.Y. Apr. 17, 2018) (name of "veggie straws" snacks and images of vegetables are truthful because they imply snacks are made from vegetables, and do not reasonably imply snacks contain fresh, whole, ripe vegetables, despite allegations labeling violated FDA labeling regulations).

In *Campbell v. Freshbev LLC*, 322 F. Supp. 3d. 330 (E.D.N.Y. 2018), the court held that the challenged "cold- pressed" claims were not deceptive when the juice underwent additional manufacturing steps because the label did not claim the juice was "only" or "exclusively" cold pressed.  *Id.* at 341; *see also Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (same).  In *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409-ARR-RLM, 2020 WL

729883, at *4 (E.D.N.Y. Feb. 13, 2020), the court held mashed potatoes labeled as "Made with Real . . . Butter" were not deceptive as a matter of law because "the Mashed Potatoes do, in fact, contain real butter." *Id*. (granting motion to dismiss despite mashed potatoes also containing margarine).  The court held the same in *Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18-cv-2250-NGG-RML, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (dismissing claims mashed potatoes "made with real butter" were falsely advertised because the potatoes were made with margarine and some real butter).

Here, as in the recently decided *Sarr*, *Reyes*, *Davis* and *Campbell* decisions, the 365 Soymilk's front label is not misleading because the product contains vanilla extract.  Any consumer that reviews the 365 Soymilk label and expects the product to contain vanilla extract has his or her expectation fulfilled, regardless of the other ingredients present.  The label does not promise the flavoring is "purely," "exclusively" or "100%" vanilla extract.

### b.      Any Ambiguity in the 365 Soymilk Label May Be Resolved by Consulting the Ingredient List.

Even if consumers somehow inferred from the 365 Soymilk label that it was exclusively flavored with vanilla extract from vanilla beans, the product's ingredient list would resolve any such confusion.  "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.  For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).  "The entire mosaic is viewed rather than each tile separately." *Belfiore v. Proctor & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (citation and quotation marks omitted).  "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous.  If so, the clarification can defeat the claim." *Davis*, 297 F. Supp. 3d at 334.

The *Steele* case is, again, instructive.  In *Steele,* the court held that vanilla ice cream purchasers who did not understand the front label "natural flavor" claim, could review the

product's back label ingredients to dispel any ambiguity.  *Id.* at *2.  Because the back label listed only "natural flavor," and not vanilla beans or vanilla extract, a reasonable consumer would not believe that the product was flavored by vanilla beans or vanilla extract.  *Ibid.*

Similarly, in *Davis*, the court held that if a reasonable consumer reviews a product's front label and misapprehends the ingredients, their confusion could be resolved by the ingredient list: "The ingredient lists thus clarify—in exactly the spot consumers are trained to look—that the premium ingredients are not the most predominant ingredients.  No reasonable consumer could have been misled in light of this clarifying language." *Id.* at 337.  Other courts have reached the same conclusion, including two in the first half of 2020.  *See Melendez v. ONE Brands, LLC, supra*, 2020 WL 1283793, at *6 (holding as a matter of law that a reasonable consumer would not be deceived upon review of Nutrition Facts Label); *Sarr v. BEF Foods, Inc.*, *supra,* 2020 WL 729883, at *4 (holding reasonable consumer would not be deceived as a matter of law when the ingredient list disclosed the mashed potatoes at issue also contained vegetable oils); *see also Reyes,* 2019 WL 3409883, at *3 (same).

Thus, even if the use of "vanilla" on the 365 Soymilk label could be considered ambiguous and that ambiguity could plausibly lead a hypothetical consumer to assume that the product's vanilla flavoring resulted entirely from vanilla extract, then the ingredient list would dispel any ambiguity because it identifies both "organic natural flavor" and "organic vanilla extract."  (FAC ¶26.)

## 2.    Plaintiffs' Claims of Misrepresentation Lacks Substance and Factual Support.

Plaintiffs rely on product testing and a consumer survey to support their allegations that: (i) 365 Soymilk contains *de minimis* amounts of vanilla extract as compared to other flavoring ingredients (FAC ¶¶27-39), and (ii) consumers understand the use of "vanilla" to mean the vanilla flavor is predominately derived from vanilla extract (FAC ¶¶21-23).  Plaintiffs' testing and survey, however, are materially flawed, unreliable, and biased, leaving their allegations without substance or factual support.

### a.      Plaintiffs' Gas Chromatography Analysis Is Unreliable.

Plaintiffs rely on a gas chromatography analysis to establish their basis for alleging that the vanilla extract (listed in the ingredients) contributes less to the vanilla flavor in 365 Soymilk than the front label leads consumers to believe.  (FAC ¶¶27-37.)  Specifically, Plaintiffs commissioned a gas chromatography-mass spectrometry ("GC-MS") analysis of 365 Soymilk to determine what chemical compounds were present in the product.  Plaintiffs' attorney then reviewed the test results and concluded that the product was predominantly flavored by "Organic Natural Flavor" because the CG-MS test detected maltol and piperonal as well as vanillin in an amount disproportional to the other components of vanilla extract.  (FAC ¶¶29-39.)  Plaintiffs' GC-MS analysis is flawed and unreliable for several reasons.

As a preliminary matter, the *Steele* court dismissed a similar GC-MS analysis on methodological grounds: "What is needed is to test, not for the universe of the ice cream's contents, but specifically for the presence of the particular chemical markers."  *Steele*, 2020 WL 3975461, at *3.  The court accordingly dismissed plaintiff's contention that the lack of vanilla extract's chemical markers indicated that Wegmans' ice cream did not contain vanilla extract, holding that "the test was not sensitive enough to detect the markers with smaller profiles in the bean."  *Ibid.*  The same problem attends here because Plaintiffs' GC-MS test does not test for specific chemical markers.

Second, Plaintiffs' methodology is further flawed as the GC-MS report shows that no control experiment was conducted on a sample with known and agreed flavor composition.  Without such a control, Plaintiffs have no basis to allege that their test could or should have detected the small amounts of chemicals associated with vanillin which they claim are truant.

Lastly, Plaintiffs' conclusions rely on their attorney's impermissible lay interpretation of raw scientific data.  Plaintiffs' counsel is not qualified to offer these conclusions, nor address the numerous questions left open by the study.  For instance, it is unclear why the study did not specifically test for maltol, piperonal, and vanillin if their presence was a key indicator used in Plaintiffs' argument.  Instead the study was simply commissioned to, "extract and analyze the

flavors from the [Product]." (*See* Dkt. 16-2.)  This is the same flaw noted by the court in *Steele*. It is likewise unclear how a GS-MS test is able to discern between 365 Soymilk's "flavors" and other ingredients, and whether such flavors are able to survive the barrage of transformations, including vaporization, ionization, mixing with other chemicals, extraction with methylene chloride, clarification, drying with anhydrous sodium sulfate, and concentration with nitrogen to which they were subjected.  Such transformations could cause reactions that modify or eliminate some chemicals in the product.  Accordingly, any inferences drawn from Plaintiffs' GC-MS report are unreliable and should be disregarded.

### b.    Plaintiffs' Consumer Survey Is Materially Flawed and Biased.

Plaintiffs also cite to a biased consumer survey that asks consumers presented with the product's front label "what does this term 'Vanilla' convey about the origin of the vanilla flavoring?"  (*See* Dkt. 16-1, at p. 8.)  Plaintiffs conclude from this survey that consumers find the labeling misleading because 64% of consumers responded that the flavor "comes from a vanilla plant, such as vanilla extract, which is made from vanilla beans from the vanilla plant."  (FAC ¶23.)  Plaintiffs' conclusion on this point lacks substance and factual support for four reasons.

*First*, these consumers have their expectations met because the product contains organic vanilla extract.  There is no deception.  *Second*, the question itself presupposes that the product's front label makes a claim regarding the source of the flavor (which is not true).  This type of flawed survey question is known as a "demand artifact."  A demand artifact conditions the responding party to guess at the surveyor's purpose (i.e., to establish that consumers have expectations regarding the source of vanilla flavoring) and subconsciously change their answer to suit this purpose.  *Third*, the question does not include a response option allowing the respondent to state that the label does not convey any information regarding the source of the product's vanilla flavor.[3]  Thus, not only does the question condition respondents to assume there

---

[3]  The survey allows respondents to answer: 1) "That it comes from a vanilla plant, such as vanilla extract, which is made from vanilla beans from the vanilla plant; 2) That it comes from artificial ingredients that are not from the vanilla plant; 3) That it comes from sources – such as wood pulp – that are natural, but

is a message regarding the source of the flavor, but it does not even let respondents assert an interpretation contrary to Plaintiffs' initial assumption(s).  *Finally*, and most importantly, the survey does not address the core question at issue in this case – does the term "vanilla" as used on the front label of the 365 Soymilk tell you what the product will taste like or what ingredients are used in the flavoring.  Accordingly, Plaintiff's survey is biased and unreliable, and should be disregarded.

### 3.    Plaintiffs Cannot Privately Enforce Alleged Violations of the FDCA.

Since Plaintiffs cannot show the 365 Soymilk label is deceptive to a reasonable consumer, they instead allege that the product's label is deceptive because it fails to comply with FDCA flavor regulations.  The FAC is riddled with citations to and discussion of complex FDCA regulations and decades old, non-binding FDA correspondence as support for Plaintiffs' liability theory.[4]  (FAC ¶¶19-22, 30, 33, 38, 40-46.)  These allegations reveal Plaintiffs' true purpose is to enforce FDCA regulations under the guise of a GBL consumer deception claim.  Private parties, however, cannot enforce the FDCA.  "[A]ll such proceedings for the enforcement, or to restrain violations, of this Act … shall be by and in the name of the United States."[5]  21 U.S.C. § 337(a); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (there can be no private cause of action if plaintiff's "true goal is to privately enforce alleged violations of the FDCA"); *Verzani v. Costco Wholesale Corp.,* No. 09-cv-2117-CM, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action and therefore [a plaintiff] cannot rely

---

are not from a vanilla plant; 4) That it comes from a combination of artificial and natural sources; and 5) None of these." Dkt. 16-1.

[4] Plaintiffs cite to chapter 21 of the Code of Federal Regulations ("C.F.R.") implementing the FDCA 15 times in the FAC.  Two of the FAC's five exhibits are outdated FDA correspondence with unrelated parties regarding these C.F.R. provisions.  *See* Dkt. 16-4 & 16-5.  Plaintiffs also cite to a trade magazine discussing FDCA vanilla flavoring regulations.  (FAC ¶42.)

[5] The FAC also makes passing reference to New York's Agriculture and Markets Law ("AML"), and its accompanying regulations, as a basis for GBL liability.  (FAC ¶19, fn.11.)  These allegations suffer from the same defects that Plaintiffs' FDCA allegations.  There is no private right of action under the AML. *See Hammer v. Am. Kennel Club*, 803 N.E.2d 766, 769 (2003); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2nd Cir. 2005) (no private right of action where none exists in the underlying statutory scheme).

on it for purposes of asserting a state-law consumer claim under G.B.L. § 349"), aff'd, 432 Fed. Appx. 29 (2d Cir. 2011).

Plaintiffs are not only precluded from directly enforcing the FDCA, they are also prevented from indirectly enforcing the FDCA by way of state law claims that are wholly dependent on alleged FDCA violations.[6]  "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts the claim."  *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (dismissing state-law deceptive practices claims where "[e]ach and every one of plaintiffs' claims are wholly FDCA-dependent"); *see also Solak v. Hain Celestial Grp., Inc.*, No. 17-cv-0704-LEK-DEP, 2018 WL 1870474, at *9 (N.D.N.Y. Apr. 17, 2018) ("the Complaint could be read as attempting to use Defendant's alleged FDCA violation as a separate basis for supporting Plaintiffs' claims under both New York's and California's consumer protection statutes.  To the extent that it does so, the Complaint counteracts the express language of the FDCA, which 'leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance' with its enumerated provision."), *quoting Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).  "Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption."  *In re Trader Joe's Tuna Litig.*, 289 F. Supp.3d 1074, 1086 (S.D. Cal. 2017) (dismissing GBL section 349 and 350 claims dependent on FDA regulatory standards).

Plaintiffs half-heartedly attempt to entwine FDCA compliance with consumer expectations by alleging that consumers expect to purchase products that conform with FDCA labeling regulations. FAC ¶¶21-22.  But, the thrust of Plaintiffs' FAC is made clear in the opening salvo: "[t]he representations are misleading because the Product contains vanillin from

---

[6] The *Steele* court rejected plaintiff's attempt to privately enforce the FDCA and similar state standards contained in New York's AML, finding that discussion of federal and state regulatory violations were "without consequence" because a private right of action did not exist, either at the federal or state level. *Steele v. Wegmans Food Markets, supra,* 2020 WL 3975461, at *1-2.

non-vanilla sources, which is required to be designated as an artificial flavor when used with vanilla and for the front label to disclose it is artificially flavored." (FAC ¶5).  Accordingly, Plaintiffs' FAC is an impermissible attempt to enforce the FCDA.

Even if Plaintiffs could privately enforce FDCA regulations, the 365 Soymilk label does not violate the GBL merely because of some alleged technical violation of the FDCA's regulations.  Rather, Plaintiffs still must show an objectively material misrepresentation on 365 Soymilk's packaging.  *See e.g., Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018) ("Plaintiff's statutory claims fail because non-functional slack-fill as defined by the FDCA and parallel state statutes, even assuming its existence, are not per se material misrepresentations under sections 349 and 350 … New York courts [] have adopted an objective definition of what constitutes a 'material misrepresentation' under section 349 and 350, which, unlike federal law, takes context into account.")  Plaintiffs have not done that because they have not shown that the perceptions of ordinary consumers align with their interpretation of the FDCA's labeling regulations.[7]  Their contention that consumer expectations are set by a byzantine web of labeling regulations strains credulity.  (FAC ¶¶21-22.)  Plaintiffs fail to allege facts showing that consumers have any understanding of these regulations, any defined expectations as to where their vanilla flavoring derives, or even if they know whether "true"

---

[7] As here, plaintiffs in *Steele*, *Sarr*, and *Reyes* (all brought by the same plaintiff's attorney in this action) premised some of their false advertising claims on alleged violations of FDCA labeling regulations. *Steele*, 2020 WL 3975461, at *1 (alleging violations of FDCA vanilla and ice cream flavor regulations); *Sarr*, 2020 WL 729883, at *5 (alleging statement "Made with Fresh Whole Potatoes" is false with regards to Defendants' mashed potatoes because FDA regulations define "fresh" as food "in its raw state and has not been frozen or subjected to any form of thermal processing or any other form of preservation."), citing 21 C.F.R. 101.95(a); *Reyes*, 2019 WL 3409883, at *4 (same).  In each case, the court held that such technical violations of FDCA regulations were meaningless in proving plaintiff's GBL claims because they were not tethered to consumer expectations. *Steele*, 2020 WL 3975461, at *2 ("the extensive discussion and argument in the motion papers with respect to particular federal standards for ice cream flavor descriptions is without consequence."); *Sarr*, 2020 WL 729883, at *5 (reasonable consumer understand that mashed potatoes are not fresh potatoes); *Reyes*, 2019 WL 3409883, at *4 (same).

vanilla extract comes from the flower, bean, stock, fruit, or root of the vanilla plant.[8]  What consumers expect is vanilla flavor, not pure vanilla bean extract.

    **4.**    **The 365 Soymilk Label Complies with Federal Regulations and Plaintiffs' Attempt to Impose Additional Requirements Is Preempted.**

    Plaintiffs' allegations that 365 Soymilk's packaging violates FDCA regulations are incorrect.  Plaintiffs' allegations challenge the use of "vanilla" on the product's front label and the inclusion of "organic natural flavors" in the ingredient list on the back label.   (FAC ¶¶5, 19-22, 27, 43-47.)  A plain reading of the FDCA regulations shows that 365 Soymilk is allowed to use both "vanilla" on the front label and "Organic Natural Flavors" in the ingredient list on the back label.

    **a.**    **365 Soymilk Is Properly Labeled "Vanilla."**

    The food product at issue in this litigation is soymilk.  Plaintiffs allege they purchased 365 Everyday Value Soymilk – Vanilla – Soymilk Beverage.  (FAC ¶¶1, 4.)  As such, the portion of the product's name that would be subject to an FDA standard of identity is "soymilk." "Vanilla," a flavoring, is an optional word in the food product's name.  Under 21 U.S.C. § 343(g), a food for which there is a standard of identity must bear on its label "the name of the food specific in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (*other than spices, flavoring, and coloring*) present in such food." (Emphasis added.)  Thus, the FDCA explicitly exempts the name of a flavoring, when included in the name of a food, from having to comply with the standard of identity or

---

[8] The extent to which Plaintiffs' interpretation of FDCA regulations is divorced from the commonsense expectations of reasonable consumers is illustrated by Plaintiffs' proposed remedy.  Plaintiffs allege that because the Product contains added vanillin and vanilla, its ingredient list is required to state "'contains vanillin, an artificial flavor (or flavoring)" with the front label informing consumers it is "'artificially flavored.'" (FAC ¶¶5, 44-45.)  In effect, Plaintiffs want to label natural flavors as artificial flavors. Following Plaintiffs' twisted logic, the cure is worse than the disease, and "correctly" labeling the soymilk means adding an entirely new deception of Plaintiffs' devising.  Adding to this absurdity, Plaintiffs insistence that the label state "artificially flavored" would conflict with the product's USDA Organic certification.  Consumers will be left wondering whether the product is indeed USDA Organic, which means that all ingredients (with a few irrelevant exceptions) must be natural and organically derived, or whether it is artificially flavored.

common-name rules that would apply if it were an ordinary ingredient.  The vanilla standards of identity do not apply to this product – soymilk.  Further, Plaintiffs allegation that "vanilla standards take precedence over general flavoring regulations when they conflict" (FAC ¶41) is unsupported by authority and inaccurate.

### b.   The Use of "Organic Natural Flavors" in the Ingredients List Does Not Violate FDCA Regulations.

Section 101.22 confirms that "extractives" from the vanilla plant are "natural flavor[s]" or "natural flavoring" (21 C.F.R. 101.22(a)(3)),[9] and expressly allows their listing on an ingredient list as "natural flavors." 21 C.F.R. 101.22(h) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor' or any combination thereof as the case may be.").  Plaintiffs have no factual basis to allege that the "organic natural flavors" listed in 365 Soymilk include artificial vanilla flavors.  But, even if they did, 21 C.F.R. section 101.22(h)(1) allows them to be identified as "natural flavors" in the ingredient list.

Vanilla extract is used in the product as a flavor, and may be disclosed as "natural flavor" in the ingredient statement, whether it is used alone or combined with other natural flavors.  The standards of identity Plaintiffs reference at 21 C.F.R. section 169.175-182 (FAC ¶19) are inapplicable.  Those standards apply to a product such as the vanilla extract available in your grocer's spice aisle, but not to the listing of vanilla as a flavoring in another food product such as soymilk.[10]

_____

[9] 21 C.F.R. 101.22(a)(3) reads in relevant part that "[n]atural flavors include the natural essence or extractive obtained from plants listed § 182.10[.]" Section 182.10 includes the common name "vanilla."
[10]  While there is no standard of identity for soymilk, the analogous one for milk provides that "each of the ingredients used shall be declared on the label as required by the applicable sections of parts 101 and 130 of this chapter." 21 C.F.R. § 101.4(b).  This makes it clear that the vanilla standards Plaintiffs cite do not take precedence over the general flavor regulations in section 101.22 discussed above. The Product's ingredient statement, which lists "organic natural flavor" and "organic vanilla extract," is fully compliant with regulations and is consistent with a product flavored by vanilla extract alone or in combination with other natural flavors.

### 5.      Plaintiffs Have Not Alleged an Injury Under GBL Sections 349 and 350.

To sufficiently plead an injury under GBL Sections 349 and 350, Plaintiffs must allege

that, "on account of a materially misleading practice, [he] purchased a product and did not receive

the full value of [his] purchase." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL

6459832, at *7 (S.D.N.Y. Oct. 26, 2016), *citing Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d

Cir. 2015).  Injury can be "overpayment or [payment of a] price premium, whereby a plaintiff pays

more than [ ]he would have but for the deceptive practice." *Id.*, *citing Koenig v. Boulder Brands,

Inc.*, 995 F.Supp.2d 274, 288-289 (S.D.N.Y. 2014). "Simply ... recit[ing] the word 'premium'

multiple times in the[ ] Complaint does not make Plaintiffs' injury any more cognizable." *Id*.

Here, Plaintiffs' price premium allegations do not constitute an injury.  They do not allege

the exact date of their purchases, what they paid for the product, or how that price compared to

competitor's prices.  *See, e.g., Colella v. Atkins Nutritional, Inc.,* 348 F. Supp. 3d 120, 143

(E.D.N.Y 2018) (plaintiff "provided no facts regarding what the premium was, what price he paid

for the products, or the price of non-premium products."). Thus, Plaintiffs fail to allege an injury

in the FAC, and their GBL Sections 349 and 350 claims should be dismissed with prejudice.

### C.      Plaintiffs Lack Standing to Pursue Injunctive Relief.

A plaintiff lacks standing to pursue injunctive relief "absent a showing of irreparable

injury, a requirement that cannot be met where there is no showing of any real or immediate threat

that the plaintiff will be wronged again." *L.A. v. Lyons*, 461 U.S. 95, 111 (1983).  "Although past

injuries may provide a basis for standing to seek money damages, they do not confer standing to

seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in

the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  In a

food labeling case, the "inability to rely on Defendant's representations" is insufficient to

demonstrate the requisite immediate injuries for injunctive relief.  *Green v. SweetWorks

Confections, LLC,* No. 18-cv-902-LTS-SN, 2019 WL 3958442, at *3 (S.D.N.Y. Aug. 21, 2019);

*see also Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 185-86 (E.D.N.Y. 2018).  In *Green*,

the court held that a plaintiff's allegation that plaintiff would not have bought the product if she

knew of the alleged deception undercut her request for injunctive relief because it became unlikely she would be "duped again." *Green*, 2019 WL 3958442, at *3.  A plaintiff likewise lacks standing to bring claims concerning products he or she did not purchase. *See, e.g., Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015).

Here, Plaintiffs lack standing to seek injunctive relief.  Plaintiffs' claim that they will buy the product again "if it was reformulated to contain flavor only from vanilla or if it is labeled accurately to reflect its contents" is insufficient to establish future injury.  (FAC ¶71.)  Plaintiffs' mere consideration not only amounts to insufficient "allegations of future injury," but also implies that the Plaintiffs will never be injured by the Product again.

**D.    The FAC Fails to State a Claim for Fraud.**

Plaintiffs fail to comply with Rule 9(b)'s heightened pleading standards, including failing to plead the requisite fraudulent intent and, as a result, this Court should dismiss Plaintiffs' fraud claim.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) is satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations;' [and] how the misrepresentations were fraudulent." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (internal citation omitted).

While a plaintiff may plead "[m]alice, intent, knowledge, and other conditions of a person's mind . . . generally," Fed. R. Civ. P. 9(b), he or she must allege "details that 'give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Schwartzco Enters. LLC*, 60 F. Supp. 3d at 344, *quoting Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir.2013).  Generalized allegations that a defendant sought to "satisfy consumers' desires" or "increase sales and profits[]" are insufficient to plead the requisite inference of scienter.  *Sarr*, 2020 WL 729883, at *9, *quoting In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413-RRM-RLM, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013).  "A court cannot infer from allegations showing that the wrong-doer made more

money a motive and opportunity to commit fraud." *In re Frito-Lay N. Am., Inc. All Nat. Litig.,* 2013 WL 4647512, at \*25.

Plaintiffs' fraud allegations fail to comply with Rule 9(b)'s requirements.  The allegations lack any specific detail.  The FAC does not allege the specific dates of purchase, nor at what price the purchases were made, nor what portions of the label they reviewed and did not review in making his purchase.  (FAC ¶¶68-71,108-114.)

Likewise, Plaintiffs fail to allege facts giving rise to a strong inference of WFM Group's fraudulent intent.  Instead, Plaintiffs simply allege that "Defendant's fraudulent intent is evidenced by its failure to accurately identify the Product on the front labels and ingredient list, when it knew its statements were neither true nor accurate and misled consumers."  (FAC ¶111.)  One could infer that Plaintiffs' background allegations regarding corporate motives to increase vanilla-product sales were directed at WFM Group.  (FAC ¶¶15-16.)  However, both *Sarr* and *In re Frito-Lay* make clear, such allegations are insufficient and do not comply with Rule 9(b).

Because Plaintiffs fail to allege the "where," "when" and "who" required to plead a fraud claim, and because Plaintiffs' scienter allegations are insufficient, this Court should dismiss Plaintiffs' fraud claim.

**E.    Plaintiffs' Negligent Misrepresentation Claim Fails.**

Plaintiffs fail to state a claim for negligent misrepresentation because they fail to plead that a special relationship existed between WFM Group and Plaintiffs and the claim is barred by the economic loss doctrine.

**1.    Plaintiffs Fail to Allege a "Special Relationship."**

To plead a claim for negligent misrepresentation, Plaintiffs must allege that WFM Group owed them "a duty of care due to a special relationship."  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 677 (E.D.N.Y. 2017).  In a commercial transaction, such a duty "has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmel v. Schaefer*, 675 N.E.2d 450, 545 (N.Y. 1996); *see also id.* (identifying

lawyers, engineers, accountants, and public weighers as individuals with whom a special relationship may arise).

Plaintiffs' conclusory allegation that WFM Group owed them a duty because it holds "itself out as having special knowledge and experience in the production, service and/or sale of the product" is insufficient.  (FAC ¶94.)  "[I]f this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case."  *Stolz v. Fage Dairy Processing Indus.*, 2015 WL 5579872 at *25 (E.D.N.Y Sept. 22, 2015).

## 2.    Plaintiffs' Negligent Misrepresentation Claim Cannot Survive When Plaintiffs Only Allege Economic Losses

Plaintiffs' negligent misrepresentation claim should also be dismissed because it is barred by the economic loss doctrine.  "The economic loss doctrine restricts the remedy of plaintiffs who have suffered economic loss, but not personal or property injury, to an action in contract."  *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-cv-2484-JS-AKT, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015), citing *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 277 (S.D.N.Y. 2004).  "If the damages suffered are of the type remediable by contract, a plaintiff may not recover in tort."  *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 937 (S.D.N.Y. 1989) (collecting cases). The economic loss rule "applies to claims for negligent misrepresentation."  *Elkind*, 2015 WL 2344134, at *12 (dismissing negligent misrepresentation claim with prejudice).  Allegations that "plaintiff and the putative class members purchased products they would have otherwise purchased at a lesser price or not at all" are subject to the economic loss doctrine.  *Gordon v. Hain Celestial Grp., Inc.*, No. 16-cv-6526-KBF, 2017 WL 213815, at *6 (S.D.N.Y. Jan. 18, 2017) (dismissing negligent misrepresentation claim with prejudice).

Here, Plaintiffs fail to allege that they suffered personal or property injury.  Instead, they allege: "Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages."  (FAC ¶97.)  As *Gordon* makes clear, such

damage allegations do not provide grounds for tort recovery, and this Court should dismiss Plaintiffs' negligent misrepresentation claim with prejudice.

**F.    Plaintiffs' Express and Implied Warranty and Magnuson-Moss Warranty Act Claims Should Be Dismissed.**

Plaintiffs' breach of warranty claims should be dismissed because Plaintiffs failed to provide WFM Group with the requisite pre-suit notice and failed to allege the 365 Soymilk purchased was inedible or otherwise not merchantable.  The Court should also dismiss Plaintiffs' MMWA claim because it fails to identify a written warranty subject to the MMWA, and also because their state law warranty claims should also be dismissed.

**1.    Plaintiffs Failed to Comply with New York's Pre-Suit Notice Requirement.**

"Under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty."  *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474-BKS-TWD, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016), *citing* N.Y. U.C.C. Law § 2-607(3)(a); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing warranty claim for lack of pre-suit notice).  Absent allegations of physical injury, a plaintiff may not typically escape New York's notice provision.  *See, e.g.*, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2018).  "Moreover, no futility exception exists in New York, to excuse the notice requirement."  *Melendez v. ONE Brands, LLC*, *supra*, 2020 WL 1283793, at *7.

Plaintiffs fail to allege that they provided proper pre-suit notice to WFM Group.  Instead, Plaintiffs allege that they "provided or will provide notice to defendant."  (FAC ¶104.) However, no such notice was provided.  Since Plaintiffs allege economic, not physical, injuries they are not excused from New York's pre-suit notice requirement.  Accordingly, all of Plaintiffs' breach of warranty claims should be dismissed.

**2.    Plaintiffs Fail to Allege the Product Was Not Merchantable and Their Implied Warranty Claim Fails.**

To plead an implied warranty of merchantability claim, Plaintiffs must allege the 365 Soymilk was unfit for human consumption.  *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154-JG-RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015).  "Where the sale of a food or

beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality." *Id.* (dismissing implied warranty claim); *see also Ackerman v. Coca-Cola Co.*, No. 09-cv-0395-JG, 2010 WL 2925955, at *25 (E.D.N.Y. Jul. 21, 2010) (holding food and beverages must meet a "minimum level of quality").

Plaintiffs fail to allege that the 365 Soymilk they purchased was unfit for human consumption.  Instead, Plaintiffs allege that "Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages." (FAC ¶107.)  These allegations are insufficient to show WFM Group breached the only implied warranty applicable to the Product – that it is fit for consumption.  Thus, Plaintiffs' implied warranty claim fails.

### 3. Plaintiffs' MMWA Claim Fails Because They Do Not Allege an Actionable Written Warranty and the Claim Duplicates Their Other Claims.

The MMWA "grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty."  *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (internal citation and quotation marks omitted).  The MMWA defines a written warranty as:

> [A]ny written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A).  Under the MMWA, claims on a product's label are merely "product descriptions" and not warranties.  *See, e.g.*, *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-cv-3808-CBA-RER, 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17, 2018), aff'd, 954 F.3d 492 (2d Cir. 2020) (dismissing MMWA claim based on "Angus beef" labeling claim); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 377-78 (S.D.N.Y. 2014) (dismissing MMWA claim based on "Restores Enamel" labeling claim); *In re Frito-Lay N. Am., Inc.*, 2013 WL 4647512, at *17 (dismissing MMWA claim based on "All Natural" labeling claim).  Further, a MMWA

claim must be dismissed when a plaintiff's state law claims are also dismissed.  *See, e.g., In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-mc-2543-JMF, 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016) ("if a Plaintiff's state law warranty claim is dismissed, so is his or her MMWA claim.").

The FAC fails to identify any written warranty under the MMWA, and the use of "vanilla" on the 365 Soymilk label is a non-actionable "product description."  Because Plaintiffs fail to identify an actionable warranty under the MMWA, Plaintiffs' MMWA claim should be dismissed with prejudice.  Further, because Plaintiffs' state law warranty claims must be dismissed as explained above, Plaintiffs' MMWA claim must be dismissed as well.

**G.      Plaintiffs' Unjust Enrichment Claim Should Be Dismissed as Duplicative.**

Plaintiffs' unjust enrichment claim should be dismissed because it is duplicative of their other claims and Plaintiffs already have an adequate remedy at law.  "[U]njust enrichment is not a catchall cause of action to be used when others fail. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *see also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697-CM, 2016 WL 6459832, at *9-10 (S.D.N.Y. Oct. 26, 2016) (dismissing unjust enrichment claims as duplicative of plaintiffs' other claims).  "District courts in this circuit have dismissed unjust enrichment claims when they have relied on the same facts as the plaintiffs' other asserted causes of action."  *Sarr*, 2020 WL 729883, at *10 (collecting cases); *Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *8.  Additionally, a plaintiff cannot state a claim for unjust enrichment when an adequate remedy at law exists.  *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) ("Unjust enrichment is an equitable claim that is unavailable when an adequate remedy exists.").

Plaintiffs' unjust enrichment cause of action relies entirely upon the same facts as Plaintiffs' other causes of actions and thus must be dismissed.  (FAC ¶¶113-14.)  Further, as Plaintiffs' other alleged causes of action make clear, Plaintiffs already have a number of other

adequate remedies at law.  While Plaintiffs' remedies at law fail for the reasons stated above, Plaintiffs cannot cure those deficiencies with their unjust enrichment claim.  *See Izquierdo*, 2016 WL 6459832, at *10 ("Here, all of Plaintiffs' causes of action have been dismissed. Their unjust enrichment claim cannot cure the failings of their other causes of action.").

## IV.    CONCLUSION

For the reasons stated herein, WFM Group asks that this court dismiss Plaintiffs' FAC with prejudice.

Dated:  September 8, 2020                     Respectfully submitted,


                                              */s/ Brian R. Blackman*
                                              Brian R. Blackman (admitted *pro hac vice*)
                                              David P. Adams (admitted *pro hac vice*)
                                              Blaxter | Blackman LLP
                                              601 California Street, Suite 1505
                                              San Francisco, California 94108
                                              Telephone: (415) 500-7700
                                              Email:  bblackman@blaxterlaw.com
                                                      dadams@blaxterlaw.com

                                              *Attorney for Defendant Whole Foods Market Group, Inc*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2020, I caused a copy of the foregoing

Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's First Amended

Complaint to be served on the following counsel via electronic mail:

Spencer I. Sheehan
Sheehan & Associates, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Tel: 516-303-0552
Email: spencer@spencersheehan.com

*Counsel for Plaintiff*

Michael Robert Reese
Sue Jung Nam
Reese LLP
100 West 93rd Street, 16th floor
New York, NY 10025
Tel:(212) 643-0500
Email: mreese@reesellp.com
          snam@reesellp.com

*Counsel for Plaintiff*

Christopher Patalano
Sheehan & Associates, PC
60 Cuttermill Rd, Suite 409
Great Neck, NY 11021
Tel:  516-303-0552
Email: cpatalano@spencersheehan.com

*Counsel for Plaintiff*

*/s/ Brian R. Blackman*
Brian R. Blackman