**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALLETA BURKE and SHARON LUCKY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 1:19-cv-05913-CBA-SMG |
| -against- | ORAL ARGUMENT REQUESTED |
| WHOLE FOODS MARKET GROUP, INC., | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT'S**
**<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Brian R. Blackman (admitted *pro hac vice*)
bblackman@blaxterlaw.com
David P. Adams (admitted *pro hac vice*)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Tel: (415) 500-7700

*Attorneys for Defendant Whole Foods*
*Market Group, Inc.*

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................1

II.    LEGAL ARGUMENT ......................................................................................2

    A.    Plaintiffs' GBL Consumer Deception Claims Fail as a Matter of Law. .............2

        1.    365 Soymilk's Label Statement "Vanilla" Is Not Misleading
            to Reasonable Consumers..................................................................2

            a.    *Mantikas* and *Sharpe* Deal with Express Ingredient
                Claims and the Presence of Vanilla Extract in the
                Product Still Renders the Label Not Misleading....................3

            b.    *Mantikas* and *Sharpe* Do Not Stand for the Proposition
                That Consumers May Never Review Ingredient Lists ...........5

        2.    Plaintiffs Fail to Show Their GBL Claims are Not
            Dependent on FDCA Regulations. ......................................................8

        3.    The Court is Not Bound to Accept Plaintiffs' Interpretation
            of Their Consumer Survey. ................................................................9

        4.    Plaintiffs Fail to Defend Their Flawed GC-MS Analysis. ...............10

        5.    Plaintiffs Fail to Allege Injury Under GBL Sections 349
            and 350. ..............................................................................................10

    B.    Plaintiffs Fail to Adequately Allege Either a Special Relationship, or
        WFM Group's Special Expertise or Intent and Thus Fail to Plead Their
        Negligent Misrepresentation Claim..............................................................11

        1.    *Greene* Is Wrongly Decided, and a Special Relationship
            Is Required.........................................................................................12

        2.    Plaintiffs Fail to Emphatically Allege WFM Group's
            Special Expertise and Intent. ...........................................................13

C.      Plaintiffs Fail to Address the Deficiencies in Their Warranty Claims. .............. 14

D.      Plaintiffs Fail to Address Deficiencies in Their Fraud Claim. ........................... 15

E.      Plaintiffs Fail to Demonstrate Their Unjust Enrichment Claim is Not

        Duplicative. ...................................................................................................... 15

F.      Plaintiffs Lack Standing to Pursue Injunctive Relief. ....................................... 16

III.    CONCLUSION ........................................................................................................ 17

## TABLE OF AUTHORITIES

## STATE CASES

*Brady v. Bayer Corp.*
  26 Cal. App. 5th 1156 (2018) ....................................................................... 6

*Kimmel v. Schaefer*
  675 N.E.2d 450 (N.Y. 1996) ....................................................................... 12


## FEDERAL CASES

*Axon v. Florida's Nat. Growers, Inc.*
  813 F. App'x 701 (2d Cir. 2020) ................................................................. 9

*Belfiore v. Proctor & Gamble Co.*
  311 F.R.D. 29 (E.D.N.Y. 2015) ................................................................. 16

*Chufen Chen v. Dunkin' Brands, Inc.*
  No. 17-cv-3808-CBA-RER, 2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018) ........... 15

*Dallas Aerospace, Inc. v. CIS Air Corp.*
  352 F.3d 775 (2d Cir. 2003) ..................................................................... 12

*Davis v. Hain Celestial Grp., Inc.*
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ........................................................ 7

*Ebner v. Fresh, Inc.*
  838 F.3d 958 (9th Cir. 2016) ..................................................................... 6

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*
  375 F.3d 168 (2d Cir. 2004) ..................................................................... 12

*Fink v. Time Warner Cable*
  714 F.3d 739 (2d Cir. 2013) ..................................................................... 9

*Greene v. Gerber Prod. Co.*
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) .................................................. 11, 12, 13, 14

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*
  No. 12-md-2413-RRM-RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ........ 15

*Izquierdo v. Mondelez Int'l, Inc.*
  No. 16-CV-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ............................ 11

*Kennedy v. Mondelez Glob. LLC*
  No. 19-CV-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ........... 4, 5

*Kommer v. Bayer Consumer Health, a division of Bayer AG*
  710 F. App'x 43 (2d Cir. 2018) ................................................................. 16

*Mantikas v. Kellog Co.*
 910 F.3d 633 (2d Cir. 2018) ................................................................2, 3, 4, 5, 6, 7

*Sarr v. BEF Foods, Inc.*
 No. 18-cv-6409-ARR-RLM, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ......15, 16

*Sharpe v. A&W Concentrate Co.*
 No. 19-CV-768 (BMC), 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020)..2, 5, 6, 7, 16

*Silva v. Smucker Nat. Foods, Inc.*
 No. 14-cv-6154-JG-RML, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .............. 14

*Steele v. Wegmans Food Markets, Inc.*
 No. 19-cv-9227-LLS, 2020 WL 3975461 (S.D.N.Y. Jul. 14, 2020) .......1, 4, 7, 8, 10

*Stolz v. Fage Dairy Processing Indus.*
 2015 WL 5579872 (E.D.N.Y Sept. 22, 2015) ........................................................ 13

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*
 250 F.3d 87 (2d Cir. 2001) ........................................................................12, 13, 14

*Tianbo Huang v. iTV Media, Inc.*
 13 F. Supp. 3d 246 (E.D.N.Y. 2014)...................................................................... 15

*Trainum v. Rockwell Collins, Inc., No.*
 16-CV-7005, 2017 WL 1093986 (S.D.N.Y. Mar. 9, 2017) .................................... 13

*Williams v. Gerber Prods. Co.*
 552 F.3d 934 (9th Cir. 2008) ............................................................................... 6, 7

*Wright v. Publishers Clearing House, Inc.*
 439 F. Supp. 3d 102 (E.D.N.Y. 2020) ................................................................... 10


## STATUTES & REGULATIONS

Fed. R. Civ. P. 8(a)(2) ................................................................................................ 8

Fed. R. Civ. P. 9(b).................................................................................................... 2

N.Y. Gen. Bus. Law § 349 ............................................................................... 2, 6, 8, 10

N.Y. Gen. Bus. Law § 350 ............................................................................... 2, 6, 8, 10

## I.   INTRODUCTION

Plaintiffs Walleta Burke and Sharon Lucky's (collectively "Plaintiffs") Opposition largely ignores Defendant Whole Foods Market Group, Inc.'s ("WFM Group") authority put forward in the Motion to Dismiss, and instead relies on distinguishable case law and flawed arguments.

Plaintiffs argue that Organic 365 Everyday Value Soymilk - Vanilla ("365 Soymilk") is deceptively labeled because it does not contain enough vanilla extract in comparison to other flavor ingredients.  Plaintiffs' argument rests on the tenuous assumption that consumers will read 365 Soymilk's front label and assume it is flavored exclusively with vanilla extract.  Plaintiffs' Opposition does not address the recent holding in *Steele v. Wegmans Food Markets, Inc*., No. 19 CIV. 9227-LLS, 2020 WL 3975461, at *2-3 (S.D.N.Y. July 14, 2020) in which the court ruled that a similar "vanilla" statement informed consumers how a product would taste, not what its ingredients were.  Plaintiffs fail to explain why the same conclusion should not apply here.

Instead, the Opposition quixotically tilts towards other windmills. Plaintiffs first attempt to distinguish case law holding that the presence of vanilla extract in 365 Soymilk renders the label non-deceptive even as to those consumers who mistakenly interpret the vanilla statement as an ingredient claim.  Plaintiffs' argument rests on authority that only applies to product labels that make express ingredient claims.  This authority does not apply here because 365 Soymilk does not explicitly claim it is "made with 100% real vanilla" or any such similar statement.

Plaintiffs next argue that when reasonable consumers are confused as to whether the vanilla statement on 365 Soymilk is a flavor or ingredient claim, these consumers may not seek clarification on the back label.  Not so.  When a front label is ambiguous, the consumer may refer to the back label to dispel the ambiguity.  Plaintiffs' authority does not hold otherwise.

- 1 -

Plaintiffs also put forth several other specious defenses of their New York General Business Law ("GBL") Sections 349 and 350 claims, all of which fail for specific reasons, and for the simple reason that 365 Soymilk is not deceptively labeled.

Finally, Plaintiffs fail to address the numerous deficiencies in their common law claims raised in WFM Group's moving papers, such as their failure to: 1) adequately plead a special relationship, or WFM Group's expertise and intent under Plaintiffs' negligent misrepresentation claim; 2) allege notice under their warranty claims; 3) allege 365 Soymilk was not merchantable under their implied warranty claim; 4) allege a written warranty under their Magnuson-Moss Warranty Act ("MMWA") claim; 5) allege fraudulent intent under Rule 9(b)'s heightened pleading standard; 6) explain how their unjust enrichment claim is not duplicative and subject to dismissal; and 7) allege a future injury conveying standing to obtain an injunction.

In sum, Plaintiffs' Opposition fails to address many of the arguments in WFM Group's moving papers, and the First Amended Complaint ("FAC") should be dismissed.

## II.  LEGAL ARGUMENT

### A.  Plaintiffs' GBL Consumer Deception Claims Fail as a Matter of Law.

Plaintiffs' argument that 365 Soymilk is deceptively labeled ignores controlling precedent and is based on case law that only applies to products making express ingredient claims.  As to Plaintiffs' other arguments, Plaintiffs are unable to show the FAC is not preempted for relying on alleged regulatory violations, unable to defend their flawed consumer survey and chromatography-mass spectrometry ("GC-MS") test, and unable to establish a price premium injury.

### 1.  365 Soymilk's Label Statement "Vanilla" Is Not Misleading to Reasonable Consumers.

Plaintiffs rely on *Mantikas v. Kellogg Co*., 910 F.3d 633, 636–39 (2d Cir. 2018) and *Sharpe v. A&W Concentrate Co*., No. 19-CV-768 (BMC), 2020 WL 4931045, at *1 (E.D.N.Y. Aug. 24, 2020) to argue that the presence of vanilla extract in 365 Soymilk

does not cure any alleged deception, and that consumers are never expected to review 365 Soymilk's back label ingredients list to cure the front label's ambiguities.  These cases, however, are inapposite and Plaintiffs' argument is contrary to controlling law. Since 365 Soymilk's front label does not expressly claim to be made with vanilla extract, consumers may check the back label to confirm its ingredient composition. In the case of such ambiguous front labels, the presence of the disputed ingredient also cures an alleged deception.

> a. *Mantikas* and *Sharpe* Deal with Express Ingredient Claims and the Presence of Vanilla Extract in the Product Still Renders the Label Not Misleading.

Plaintiffs rely on *Mantikas* to argue that the presence of vanilla extract in 365 Soymilk does not remedy the alleged deception on the product's front label.  *Mantikas,* however, is distinguishable and its reasoning does not apply where a product's label does not make an express ingredient claim.

In *Mantikas*, plaintiffs alleged that crackers advertised as "MADE WITH WHOLE GRAIN" and "MADE WITH 8G OF WHOLE GRAIN PER SERVING," were deceptively labeled because they were made predominantly with white flower.  *Mantikas,* 910 F.3d at 635–36.  The Second Circuit overturned the district court's dismissal of plaintiff's GBL false advertising claims and held that "the representation that a cracker is "made with whole grain" would [] plausibly lead a reasonable consumer to conclude that the grain ingredient was entirely, or at least predominately, whole grain."  *Id.* at 638.

In so holding, the court focused on the fact that the disputed claim was an express ingredient claim.  For instance, the court explained "reasonable consumers are likely to understand that crackers are typically made predominantly of grain.  They look to the bold assertions on the packaging to discern what type of grain."  *Id.* at 638.  The court also explained that "the rule that Defendant contends emerges from these district court decisions—that, as a matter of law, it is not misleading to state that a product is made with

- 3 -

a specified ingredient if that ingredient is in fact present—would validate highly deceptive advertising and labeling." *Ibid.*

Subsequent decisions have distinguished *Mantikas* on the ground that the challenged packaging statements were express statements about ingredients. For instance, in *Steele,* the Southern District of New York recently held that Wegman's Vanilla Ice Cream was not deceptively labeled under a similar argument brought by Plaintiffs in this case. *Steele,* 2020 WL 3975461, at *2-3. The court distinguished *Mantikas*:

> The plaintiffs assume that buyers take it for granted that natural vanilla flavor is wholly or largely derived from vanilla beans, and argue that if the predominant component of the flavoring is not from beans or vanilla extract, the customer is misled. They point to *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) where the Cheez-It crackers box proclaimed WHOLE GRAIN in large type; there was in fact a small amount of whole grain in the crackers, but they were mainly made of less nutritious enriched white flour. This case is different. The Wegmans container does not mention vanilla beans, or bean extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where there is deception. What is misrepresented? The ice cream is vanilla flavored. The sources of the flavor are natural, not artificial

*Id.* at *2.

Similarly, in *Kennedy v. Mondelez Glob*. LLC, No. 19-CV-302-ENV-SJB, 2020 WL 4006197, at *1-3 (E.D.N.Y. July 10, 2020), plaintiffs alleged graham crackers made predominately with white flower were misleadingly packaged because consumers expected them to be made with whole wheat flower. This argument rested on the assumption that consumers associated the product's name with graham flower, a type a whole wheat flower. *Ibid.* The court held that the claim made by the product's name was not an ingredient claim, but instead a descriptor of the type and taste of the product. The court distinguished *Mantikas* on these grounds:

> Plaintiffs' "whole grain" allegations in this case are distinguishable from the products in *Mantikas*. The products here are not labelled or represented as "crackers made with graham flour" or "crackers made with graham"—they are instead referred to as "grahams" or "graham

- 4 -

> crackers." And as noted above, saying "graham" or "graham cracker"
> does not necessarily constitute a representation about the quantum of
> graham flour in the product. Use of the label "graham" does not
> implicate the same concern about a particular ingredient being
> highlighted and presented to consumers to deceive them into thinking
> such an ingredient is the primary or predominant ingredient.

*Id.* at *11.

The same reasoning applies here. 365 Soymilk's label does not state "made with

real vanilla" or "100% vanilla extract."  ECF No. 16, FAC ¶3.  Instead, the label simply

informs consumers that they are purchasing vanilla flavored soymilk.  There is no

affirmative representation that must be bolstered by a certain amount of vanilla extract –

only a flavor claim that is substantiated by the presence of vanilla extract.

This distinction equally applies to Plaintiffs' proffering of *Sharpe v. A&W*

*Concentrate Co.,* No. 19-CV-768 (BMC), 2020 WL 4931045, at *1 (E.D.N.Y. Aug. 24,

2020).  *Sharpe* too involved an express ingredient claim on the products' label – "MADE

WITH AGED VANILLA."  *Id.* at *1.  The court relied on this key fact to conclude that

"[b]y holding out their products as containing "aged vanilla," defendants' representation is

the equivalent to stating the beverages are "Made With Natural Vanilla.""  *Id.* at *5.  The

"made with" element of these statements differentiates these statements from the present

facts because it establishes the statements as ingredient claim.  No such modifier exists on

the 365 Soymilk label because "vanilla" is a flavor statement not an ingredient claim.

**b.     *Mantikas* and *Sharpe* Do Not Stand for the Proposition That Consumers May Never Review Ingredient Lists.**

Plaintiffs incorrectly contend that under *Mantikas* reasonable consumers are never

expected to refer to the information on a product's back label.  This interpretation

misreads *Mantikas*, the authority on which it relies, and controlling New York precedent.

Instead, consumers may rely on back labels to clarify ambiguous front labels.

In *Mantikas*, defendant argued that the front label's affirmative misrepresentation

could be cured by reviewing the box's side panel ingredients list.  *Id.* at 637.  The court

disagreed and relied on the Ninth Circuit's holding in *Williams v. Gerber Prods. Co*., 552

F.3d 934, 939 (9th Cir. 2008) to hold that:

> '[R]easonable consumers should [not] be expected to look beyond
> misleading representations on the front of the box to discover the truth
> from the ingredient list in small print on the side of the box.' [Citation]
> 'Instead, reasonable consumers expect that the ingredient list contains
> more detailed information about the product that confirms other
> representations on the packaging.'

*Id* at 637, quoting *Williams,* 552 F.3d at 939.

Plaintiffs argue that *Mantikas*, and the *Sharpe* decision which relies on it, show

that consumers of 365 Soymilk may in no circumstance review the product's ingredient

list.  Plaintiffs' rote application of *Mantikas* and *Williams* does not apply here for two

reasons.

First, *Williams* considers claims under California's false advertising statutes, not

New York's GBL Section 349 and 350.  *Williams* was only cited in *Mantikas* because the

plaintiff in that case brought claims under New York *and* California law.  The case's

precedential value in a claim only involving New York false advertising law is dubious at

best.

Second, both the Ninth Circuit and California Courts have limited *Williams'*

holding and found it reasonable for consumers to use the back label of a product to resolve

front label ambiguity (as opposed to affirmative misrepresentations).  *See Ebner v. Fresh,*

*Inc*. 838 F.3d 958, 965–66 (9th Cir. 2016) (*Williams* stands for the "proposition that if the

defendant commits an act of deception, the presence of fine print revealing the truth is

insufficient to dispel that deception."); *Brady v. Bayer Corp*., 26 Cal. App. 5th 1156, 1157

(2018) (examining *Williams* and its prodigy and concluding that qualifiers on the front

label of a package can "ameliorate any tendency of the label to mislead" in cases where

the back label confirms, rather than conflicts, with a reasonable interpretation of the front

label).

- 6 -

This limited reading of *Williams,* and its application in *Mantikas*, conforms with the existing body of New York case law which holds that, "[i]f a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous.  If so, the clarification can defeat the claim."  *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018).

Here, 365 Soymilk's label is, at most, ambiguous.  To the extent a reasonable consumer is confused whether vanilla is a flavor or ingredient claim, they may refer to 365 Soymilk's ingredient list to confirm the product's flavor is a result of "Natural Flavor" and "Organic Vanilla Extract."  This is a far cry from the deceptive ingredient claims in *Mantikas* ("MADE WITH WHOLE GRAIN") and *Sharpe* ("MADE WITH AGED VANILLA") which were contradicted by the ingredients list.

Plaintiffs further argue that 365 Soymilk's ingredients list in this case does not provide consumers with enough information to dispel the front label's ambiguity because it does not provide the specific amount of each flavor type.  Plaintiffs fail to address the holding in *Steele*, where an even more cryptic back label flavor disclosure was deemed sufficient to dispel front label ambiguity:

> Those who prefer natural ingredients will note that it has natural vanilla flavor, and no artificial flavors. Evidently there are various natural substances which have a vanilla flavor. Those interested in the actual ingredients can read the list, which mentions neither vanilla beans nor extracts, but they will not learn the components, amounts or proportions of the Natural Flavor.

*Steele*, 2020 WL 3975461, at *2.  Accordingly, reasonable consumers may dispel any ambiguity regarding 365 Soymilk's front label by reviewing the back label.

     2.     **Plaintiffs Fail to Show Their GBL Claims are Not Dependent on FDCA Regulations.**

Plaintiffs admit they cannot privately enforce the FDCA, or base their GBL Section 349 and 350 claims on FDCA regulatory violations.[1]  Where the parties differ is determining whether Plaintiffs' theory of deception is dependent on FDCA regulations.

Contrary to Plaintiffs' arguments, their theory of deception is heavily dependent on FDCA regulatory violations.  This is clear not only from the FDCA citations replete within the FAC, but also, tellingly, Plaintiffs' proposed remedies that are dictated directly by FDCA regulations:

- "when vanillin (from non-vanilla sources) and vanilla are combined, the ingredient list is required to state '"contains vanillin, an artificial flavor (or flavoring)." ECF No. 16, FAC ¶44, citing to 21 C.F.R. § 169.180(b);

- "The Product's use of vanillin, piperonal and maltol ("organic natural flavor") with vanilla ("organic vanilla extract") requires the front label to disclose "artificial vanilla flavor." ECF No. 16, FAC ¶45, citing to Dkt.16-4, FAC Exhibit D, 1966 FDA correspondence.

Though Plaintiffs artfully argue that their theory of deception is not founded on such regulations, the cure reveals the true nature of alleged malady.

Further, despite Plaintiffs' citation to out-of-circuit authority, Plaintiffs make no factual allegations supporting the connection between FDCA regulations and consumer expectations in this particular instance.  This omission is all the more glaring because Plaintiffs had the opportunity to attempt to substantiate such a connection in their consumer survey, yet chose not to. ECF No.16-1, FAC Exhibit A, Propeller Insights, Non-Dairy Milk Alternatives Study, Survey (survey contains no questions linking consumer perception to FDCA regulations).

Finally, Plaintiffs attempt to argue that WFM Group's proffered preemption case law may be distinguished because it involved instances where alleged regulatory

---

[1] Since Plaintiffs concede this point, the extensive citation and discussion of FDCA regulation in the FAC is "without consequence." *Steele*, 2020 WL 3975461, at *2. Accordingly, these allegations are inconsistent with Rule 8's requirement that the complaint contain a "short and plain statement of the claim…" Fed. R. Civ. P. 8(a)(2).

violations were not inherently deceptive and thus not actionable on their own. Opposition pp.17-18. Plaintiffs fail to grasp that there is no distinction between these cases and this case - take away Plaintiffs' web of FDCA allegations, and there is no basis for finding 365 Soymilk's label misbranded or deceptive.

> 3.      **The Court is Not Bound to Accept Plaintiffs' Interpretation of Their Consumer Survey.**

Plaintiffs proffer out-of-circuit authority for the proposition that the Court *must* accept their interpretation of their consumer survey which allegedly shows that 365 Soymilk's label is deceptive. While the Court may be bound to accept well-pled facts, it is not bound to accept Plaintiffs' conclusory lay-interpretation of their own survey.

Where "the allegations of [a] [c]omplaint are materially inconsistent with the" evidence a plaintiff relies on to make those allegations, we may "easily conclude that [p]laintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). For example, in *Axon v. Florida's Nat. Growers, Inc*., 813 F. App'x 701, 704–05 (2d Cir. 2020), plaintiff attempted to rely on conclusions gleaned from a survey attached to the complaint. The court held that:

> even without making findings of fact regarding the survey, the court properly determined that the claims Axon asserted based on the survey were facially unsupported by it. Put simply, the survey does not render Axon's claims plausible even taking the allegations of the proposed amended complaint as true and viewing them in the light most favorable to her.

*Id.* at 704-05.

As in *Axon*, the Court should disregard Plaintiffs' conclusions regarding the facts presented in their consumer survey.

**4.**     **Plaintiffs Fail to Defend Their Flawed GC-MS Analysis.**

Plaintiffs fail to resolve the inadequacies of their flawed GC-MS analysis of 365 Soymilk.  First, Plaintiffs attempt to distinguish *Steele*, where the court disregarded a nearly identical survey on methodological grounds, because "unlike *Steele*, Plaintiffs do not allege the Product lacks any vanilla, but that it contains less than consumers expect…" Opposition, p.19.  This is a distinction without a difference, and Plaintiffs fail to explain the relevance of this point.  The *Steele* court threw out the test because it did not test for the specific chemical markers of vanilla extract.  *Steele,* 2020 WL 3975461, at *3*.  The same applies here.

Plaintiffs argue that testing for chemical markers does not make sense in the chromatography-mass spectrometry context because it takes away the test's ability to compare "results with a known authentic sample."  Opposition, p.20.  Not only does this argument fly in the face of *Steele*'s reasoning, but it directly underscores the fatal flaw of Plaintiffs' test – lack of an authentic control sample.  Plaintiff cannot defend chromatography-mass spectrometry testing by pointing to the method's ability to test against control samples, then at the same time deny that a control is needed in this instance.

**5.**     **Plaintiffs Fail to Allege Injury Under GBL Sections 349 and 350.**

Plaintiffs contend that by baldly alleging 365 Soymilk was purchased at a price premium they have sufficiently alleged injury for purposes of stating their consumer deception claims under GBL sections 349 and 350.  Courts, however, have held that mere "boilerplate recitations of the formula for calculating a price premium" are insufficient to establish injury and have required plaintiffs to allege "non-conclusory allegations actually demonstrating that the Plaintiffs paid a price premium for any of the products."  *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 114 (E.D.N.Y. 2020).

Moreover, Plaintiffs' price premium allegations are especially dubious in the present matter because, as Plaintiffs allege, Whole Foods Market is a "high-value" grocery store known for selling quality goods at a price point above that of its competitors.  ECF No.16, FAC ¶65. Plaintiffs' barebones allegations leave open a number of possibilities regarding the alleged price premium, including, that the premium is as a result of superior ingredients or, that as a "private label" product there actually is no premium at all.

Another possibility, assuming the existence of a price premium,  is that it is just as likely that any price premium is as a result of the manufacture's price schedule as opposed to the plaintiff's bald allegation.  This possibility too thwarts Plaintiffs' allegation that it was injured by WFM Group.  *Izquierdo v. Mondelez Int'l, Inc*., No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (no injury where the "Complaint still fails to state that [manufacturer], and not the ultimate Candy seller, benefited from any price inflation.").

**B.      Plaintiffs Fail to Adequately Allege Either a Special Relationship, or WFM Group's Special Expertise or Intent and Thus Fail to Plead Their Negligent Misrepresentation Claim.**

Plaintiffs rely on *Greene v. Gerber Prod. Co*., 262 F. Supp. 3d 38, 75–77 (E.D.N.Y. 2017), to argue that Plaintiffs need not plead a special relationship between them and WFM Group to state a claim for negligent misrepresentation.  Plaintiffs' argument fails.[2]

In *Green*, the Eastern District held that where a plaintiff fails to allege a special relationship, they can make up for it by "emphatically" alleging "the person making the representation held or appeared to hold unique or special expertise" and "the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Greene,* 262 F. Supp. 3d at 75–77.

---

[2] Plaintiffs' Opposition fails to respond at all to the argument that Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine.

Plaintiffs cannot rely on *Greene* because it is wrongly decided, and because they fail to emphatically allege WFM Group has special expertise and intended that Plaintiffs rely on 365 Soymilk's vanilla statement.

      1.      ***Greene* Is Wrongly Decided, and a Special Relationship Is Required.**

Plaintiffs' reliance on *Green* is misplaced as *Green* incorrectly holds that a plaintiff need not plead a special relationship. *Greene* relies on *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103–04 (2d Cir. 2001) and *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co*. of N.Y., 375 F.3d 168, 188–89 (2d Cir. 2004) for the proposition that a plaintiff need not plead a special relationship so long as they emphatically plead defendant's special expertise and intent. Neither the *Suez* nor *Eternity Glob.* decisions, however, dispensed with the special relationship requirement as *Greene* suggests. *Suez,* 250 F.3d at 103 ("plaintiff's complaint implies a relationship between the parties that extended beyond the typical arm's length business transaction: defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information."); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co*. of N.Y., 375 F.3d 168, 188–89 (2d Cir. 2004) (holding that *Suez* does not dispense with special relationship requirement).

Indeed, completely eradicating the special relationship requirement directly contradicts the New York Court of Appeals seminal holding in *Kimmell v. Schaefer,* 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450, 454 (1996), which "does nothing to undermine the basic requirement of a 'special relationship' for a negligent misrepresentation tort action." *Dallas Aerospace, Inc. v. CIS Air Corp*., 352 F.3d 775, 788–89 (2d Cir. 2003). *Greene*, may not purport to rely on *Kimmell, Suez*, and *Eternity Glob.* and at the same time eschew the special relationship requirement all together.

Plaintiffs are unable to plead a special relationship here. Under the special relationship test, "courts have consistently held that advertisements alone are not sufficient" to establish a special relationship "based on an advertisement directed at consumers and

intended to induce reliance." *Stoltz v. Fage Dairy Processing Indus.*, S.A., No. 14-CV-3826 MKB, 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015). Indeed, "if this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case." *Stolz*, 2015 WL 5579872, at *25.

Here, Plaintiffs fail to plead any relationship beyond that of buyer and seller and their negligent misrepresentation claim fails.

### 2. Plaintiffs Fail to Emphatically Allege WFM Group's Special Expertise and Intent.

Even if this Court were to credit Plaintiffs' assertion that a special relationship is not required when special expertise and intent are "emphatically" pled, Plaintiffs fail to do so here.

Plaintiffs allege with no supporting facts that "WFM Group owed them a duty because it holds "itself out as having special knowledge and experience in the production, service and/or sale of the product." ECF No.16, FAC ¶94. This boilerplate allegation is a far cry from the detailed allegations of specialized knowledge which courts considered "emphatic" in *Greene* and *Suez. See Greene,* 262 F. Supp. 3d at 76 (plaintiff alleged specialized knowledge by showing defendant conducted study undermining label claims and knew FDA rejected label claims); *Suez*, 250 F.3d at 103 (plaintiff alleged specialized knowledge by alleging defendants possessed report undermining the strength of investment in health care financing venture and informing plaintiff investors they were knowledgeable). As *Greene* noted, "[t]hese are not merely "knowledge of the particulars of the company's business," which would "not constitute the type of 'specialized knowledge' that is required in order to impose a duty of care." *Greene*, 262 F. Supp. 3d at 76, quoting *Trainum v. Rockwell Collins, Inc.*, No. 16-CV-7005, 2017 WL 1093986, at *4 (S.D.N.Y. Mar. 9, 2017). Contrastingly, Plaintiffs make no allegation that WFM Group possess any similar product testing or made any communication whatsoever to Plaintiffs assuring them

of its expertise.  Instead, Plaintiffs' allegations rest on the simple particulars of WFM Group's business and are not actionable.

The FAC also formulaically alleges that WFM Group intended that consumers rely on the labeling but fails to adduce any facts supporting this claim other than the fact that the labeling exists.  Again, these are not the detailed "emphatic" allegations present in *Greene* and *Suez*.  *Greene*, 262 F. Supp. 3d at 76 (defendant intentionally applied for FDA approval for label claims, placed them prominently on label, and placed advertisements with claims in consumer magazines); *Suez*, 250 F.3d at 103 ("defendants knew that plaintiffs sought information about [investment background] to aid their investment decision and defendants supplied [misleading information] for that purpose, while dissuading plaintiffs from conducting their own investigation.").  Plaintiffs thus fail to adequately allege WFM Group's special expertise or intent, and their negligent misrepresentation claim fails.

**C.      Plaintiffs Fail to Address the Deficiencies in Their Warranty Claims.**

Plaintiffs halfheartedly defend their warranty claims by merely reciting the elements for breaches of express and implied warranty.  Plaintiffs, however, completely fail to respond to WFM Group's argument that no notice was adequately alleged or given as required by New York law.

Further, as to Plaintiffs' implied warranty claim, Plaintiffs fail to respond to WFM Group's authority showing that, "[w]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."  *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154-JG-RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (dismissing implied warranty claim).  Instead, Plaintiffs cite to *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530–31 (E.D.N.Y. 2012), which deals with the merchantability of motorhomes, not beverages.  Plaintiffs fail to allege that 365 Soymilk was undrinkable, and their implied warranty claim fails.

Finally, Plaintiffs also fail to address that they do not allege a written warranty as required under the MMWA. *See, e.g.*, *Chufen Chen v. Dunkin' Brands, Inc.*, No. 17-cv-3808-CBA-RER, 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17, 2018), aff'd, 954 F.3d 492 (2d Cir. 2020) (dismissing MMWA claim based on "Angus beef" labeling claim). Thus, Plaintiffs' MMWA claim should be dismissed.

**D.      Plaintiffs Fail to Address Deficiencies in Their Fraud Claim.**

Similar to Plaintiffs' defense of their warranty claims, Plaintiffs Opposition simply recites the elements of fraud without responding to any of WFM Group's arguments. Plaintiffs make no attempt to allege any facts beyond profit motive demonstrating WFM Groups' fraudulent intent and thus fail to state a claim for fraud. *Sarr v. BEF Foods, Inc.*, No. 18-cv-6409-ARR-RLM, 2020 WL 729883, at *9 (E.D.N.Y. Feb. 13, 2020), quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413-RRM-RLM, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) ("Generalized allegations that a defendant sought to "satisfy consumers' desires" or "increase sales and profits[]" are insufficient to plead the requisite inference of scienter).

**E.      Plaintiffs Fail to Demonstrate Their Unjust Enrichment Claim is Not Duplicative.**

Plaintiffs disregard WFM Group's case law, and rely on *Tianbo Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) to argue that dismissal of the unjust enrichment claim is premature because this claim could survive even if Plaintiffs' others do not. *Tianbo*, however, is distinguishable because Plaintiffs' unjust enrichment claim is entirely dependent on their other claims.

In *Tianbo*, determining the overlap between plaintiffs various claims was a matter of fact because the court needed to determine whether a written contract covered all aspects of a parties' agreement. *Id.* Contrastingly, here there is no dispute over the scope of Plaintiffs' unjust enrichment claim – as shown by the laconic two paragraph pleading underlying this cause of action, it is entirely derivative of Plaintiffs' other claims. ECF

No.16, FAC ¶¶113-114.  In *Sarr*, the court addressed and dismissed Plaintiffs' argument here, holding that when an unjust enrichment claim "arise[s] out of the same alleged misrepresentations" as a plaintiff's false advertising claims it is duplicative and subject to dismissal.  *Sarr*, 2020 WL 729883, at *10.

**F.      Plaintiffs Lack Standing to Pursue Injunctive Relief.**

Plaintiffs rely on *Belfiore v. Procter & Gamble Co.,* 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) and its progeny to argue that the inability to rely on labels in the future constitutes an injury conferring standing to pursue injunctive relief.  This line of cases, however, conflict with the Second Circuit's decision in *Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43, 44 (2d Cir. 2018), which held that absent an actual intent to purchase the product in the future there is no standing to obtain injunctive relief.  *See Sharpe v. A&W Concentrate Co*., No. 19-CV-768 (BMC), 2020 WL 4931045, at *3–4 (E.D.N.Y. Aug. 24, 2020) (distinguishing *Belfiore* line of cases as mostly predating *Kommer*, and holding that "[b]ecause plaintiffs admit that they are unlikely to purchase the products at issue, unless the products are changed, they lack standing to seek injunctive relief.").  Here, as in *Sharpe,* Plaintiffs allege they will purchase the product again only if it is changed, and thus fail to allege standing to obtain injunctive relief.

//

//

III.    CONCLUSION

For the reasons stated herein, WFM Group asks that this Court dismiss Plaintiffs'

FAC with prejudice.


Dated:  October 6, 2020                    Respectfully submitted,


                                           /s/ Brian R. Blackman
                                           Brian R. Blackman (admitted *pro hac vice*)
                                           David P. Adams (admitted *pro hac vice*)
                                           Blaxter | Blackman LLP
                                           601 California Street, Suite 1505
                                           San Francisco, California 94108
                                           Telephone: (415) 500-7700
                                           Email: bblackman@blaxterlaw.com
                                                    dadams@blaxterlaw.com

                                           *Attorney for Defendant Whole Foods
                                           Market Group, Inc*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2020, I caused a copy of the foregoing Reply in

Support of Defendant's Motion to Dismiss First Amended Complaint to be served on the

following counsel via electronic mail:

Spencer I. Sheehan
Sheehan & Associates, P.C.
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Tel: 516-303-0552
Email: spencer@spencersheehan.com

*Counsel for Plaintiff*


Christopher Patalano
Sheehan & Associates, PC
60 Cuttermill Rd, Suite 409
Great Neck, NY 11021
Tel:  516-303-0552
Email: cpatalano@spencersheehan.com

*Counsel for Plaintiff*

Michael Robert Reese
Sue Jung Nam
Reese LLP
100 West 93rd Street, 16th floor
New York, NY 10025
Tel:(212) 643-0500
Email:  mreese@reesellp.com
        snam@reesellp.com

*Counsel for Plaintiff*



 */s/ Brian R. Blackman*
 Brian R. Blackman