United States District Court
Eastern District of New York

1:19-cv-05913-CBA-SMG

Walleta Burke, Sharon Lucky, individually
and on behalf of all others similarly situated,

Plaintiffs,

- against -

Whole Foods Market Group, Inc.

Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3409
Telephone: (516) 303-0552
spencer@spencersheehan.com

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
mreese@reesellp.com

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................ 1

LEGAL STANDARDS ....................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.  PLAINTIFFS HAVE PLAUSIBLY ALLEGED DECEPTION ........................................ 5

  A.  Defendant Cannot Assert Truthfulness as a Defense for Alleged Deception ......................................................................... 6

  B.  The Ingredient List on the Back of the Product Is Insufficient to Correct or Clarify the Misleading Statement on the Front of the Product ...................................................................... 8

  C.  Defendant's Authorities are Inapposite Because They Involve Instances Where Labeling Purportedly "Cured" the Deception ....................................................................... 10

II.  PLAINTIFFS ESTABLISHED SUFFICIENT INJURY TO PURSUE THEIR GBL CLAIMS FOR DAMAGES ........................................ 11

III.  PLAINTIFFS' GBL CLAIMS ARE BASED ON CONDUCT THAT IS DECEPTIVE INDEPENDENT OF FEDERAL OR STATE REGULATIONS ........................................................................... 13

  A.  Plaintiffs Do Not Rely on Violations of FDA Regulations for their GBL Claims ............................................................... 14

  B.  Defendant's Assertion that the Regulations Have No Weight is Without Merit ................................................................ 15

  C.  Defendant's Authorities Address "Technical Violations" .................... 17

IV.  DEFENDANT'S FACTUAL ATTACK ON THE AMENDED COMPLAINT'S TESTING AND SURVEY ALLEGATIONS DISREGARDS THE COURT'S ROLE ON A MOTION TO DISMISS ........................ 18

  A.  Plaintiff's Survey Results Support a Reasonable Conclusion ........................................................................... 18

  B.  Defendant's Attacks on Testing Method are Misplaced ...................... 19

V.      PLAINTIFFS PROPERLY ALLEGED COMMON LAW CLAIMS ............................. 21

        A.      Plaintiffs Properly Pled Negligent Representation Claims .................................. 21

        B.      Plaintiffs Properly Alleged Breach of Express Warranty
                Claim .............................................................................................................. 22

        C.      Plaintiffs Properly Pled Breach of Implied Warranty Claim ............................... 22

        D.      Plaintiffs Properly Pled Fraud Claims ................................................................. 23

        E.      Plaintiffs' Claims of Unjust Enrichment are Not Duplicative
                ........................................................................................................................ 23

VI.     PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF .......................... 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09-cv-00395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013)............................................. 24

*Am. Home Prods. Corp. v. Fed. Trade Comm'n*,
  695 F.2d 681 (3d Cir.1982)......................................................................... 15

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)......................................................................... 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................... 4, 18

*Berger v. MFI Holding Corporation*,
  No. 17-cv-06728 (E.D.N.Y. Apr. 3, 2019) ......................................................................... 10

*Berni v. Barilla S.p.A., et al. v. Schulman*,
  No. 19-cv-1921, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020) ................................ 25

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir. 2003)......................................................................... 6

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001)......................................................................... 14

*Burton v. Iyogi, Inc.*,
  No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015)............................................. 23

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ......................................................................... 17

*Davis v. Hain Celestial Grp. Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ......................................................................... 11

*Doe v. Columbia University*,
  831 F.3d 46 (2d Cir. 2016)......................................................................... 18

*Dumont v. Reilly Food Co.*, 934 F.3d 35 (1st Cir. 2019)............................................................. 15

*Duran v. Henkel of America, Inc.*,
  __ F.Supp.3d __, 2020 WL 1503456 (S.D.N.Y. March 30, 2020)................................... 5, 12

iv

*Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004).................................................................................. 21

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010)..................................................................................... 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)............................................................................................... 24

*Galper v. JP Morgan Chase Bank, N.A.*,
   802 F.3d 437 (2d Cir. 2015)..................................................................................... 4

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995)....................................................................................... 4

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..................................................................... 12

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ......................................................................... 24

*Greene v. Gerber Products Co.*,
   262 F. Supp 3d 38 (E.D.N.Y. 2017) .................................................................... 21

*Hanley v. Chicago Title Ins. Co.*,
   No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ............................. 4

*Henry v. Daytop Vill., Inc.*,
   42 F.3d 89 (2d Cir.1994)....................................................................................... 23

*Huang v. iTV Media, Inc.*,
   13 F. Supp. 3d 246 (E.D.N.Y. 2014) ................................................................... 24

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................................. 14

In re Scotts EZ Seed Litig.,
   304 F.R.D. 397 (S.D.N.Y. 2015) ......................................................................... 11

*In re Trader Joe's Tuna Litig.*,
   289 F. Supp. 3d 1074 (C.D. Cal 2017) ................................................................ 17

*J.A.O.Acquisition Corp. v. Stavitsky*,
   8 NY3d 144 (2007) ............................................................................................... 21

*Jackson-Mau v. Walgreen Co.*,
   No. 18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019) ......................... 24

*Jones v. Halstead Management Co., LLC*,
    81 F. Supp. 3d 324 (S.D.N.Y. 2015)................................................................. 18

*Kacocha v. Nestle Purina Petcare Co.*,
    No. 15-cv-5489 (KMK) (S.D.N.Y. 2016)........................................................ 13

*Karlin v. IVF Am., Inc.*,
    93 N.Y.2d 282 (1999) ....................................................................................... 5

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014).............................................................. 13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
    797 F.3d 160 (2d Cir. 2015)............................................................................. 23

*Mandarin v. Wildenstein*,
    16 N.Y.3d 181 (2011) ...................................................................................... 21

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018)...................................................................... passim

*Melendez v. One Brands*,
    No. 18-cv-00650, 2020 U.S. Dist. LEXIS 49094 (E.D.N.Y. Mar. 16, 2020)........ 11

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d. Cir. 2015).............................................................................. 5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) .................................................................................... 5, 11

*Patane v. Nestle N. Am., Inc.*,
    314 F. Supp. 3d 375 (D. Conn. 2018) .............................................................. 13

*Patane v. Nestlé Waters North America, Inc.*,
    369 F. Supp. 3d 382 (D. Conn. 2019).............................................................. 15

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005).............................................................................. 11

*Quiroz v. Beaverton Foods, Inc.*,
    No. 17-cv-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)........................ 15

*Reyes v. Crystal Farms Refrigerated Distrib. Co.*,
    No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019)........ 10

*Rivera v. Navient Solutions, LLC*,
    2020 WL 4895698 (S.D.N.Y. August 19, 2020) ................................................ 5

*Ross v. Bolton,*
    904 F.2d 819 (2d Cir.1990) ..................................................................... 23

*Sarr v. BEF Foods*,
    No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) ......................... 10

*Shalikar v. Asahi Beer U.S.A., Inc.,*
    No. 17–CV-02713 JAK, 2017 WL 9362139 (C.D. Cal. 2017) ............................... 19

*Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*,
    __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045
    (E.D.N.Y. August 24, 2020) ....................................................... 7, 8, 21

*Small v. Lorillard Tobacco Co.,*
    94 N.Y.2d 43 (2013) ............................................................ 11

*Solak v. Hain Celestial Grp., Inc.*,
    No. 3:17-cv-0704, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. Apr. 17, 2018) ................ 17

*Steele v. Wegmans Food Markets, Inc.,*
    2020 U.S. Dist. LEXIS 123637 at *4-5 (S.D.N.Y. July 14, 2020) ......................... 19

*Vizcarra v. Unilever United States, Inc.*,
    No. 4:20-cv-02777, 2020 WL 4016810 (N.D. Cal. July 16, 2020) ......................... 20

**Statutes**

21 U.S.C. § 337(a) ............................................................... 14

N.Y. Gen. Bus. Law § 349 ................................................... passim

N.Y. Gen. Bus. Law § 350 ................................................. 1, 3, 5, 10

**Regulations**

21 C.F.R. § 101.22 ............................................................... 16

21 C.F.R. § 169.180(b) ........................................................... 16

**Rules**

Fed. R. Civ. P.  8(e)(2) .......................................................... 23

Fed. R. Civ. P.  9(b) ............................................................. 23

Fed. R. Civ. P. 12(b)(6) ........................................................... 4

Plaintiffs Walleta Burke ("Plaintiff Burke") and Sharon Lucky ("Plaintiff Lucky") ("Plaintiffs") respectfully submit this memorandum of law in opposition to the motion by Defendant Whole Foods Market Group, Inc. ("Defendant" or "Whole Foods") to dismiss their First Amended Class Action Complaint, ECF No. 16 ("Amended Complaint or "Am. Comp.").

For the reasons given below, the Court should deny Defendant's motion.

## INTRODUCTION

Plaintiffs bring claims for damages for violations of New York General Business Law ("GBL") §§ 349 and 350 and common law claims on behalf of themselves and a New York class.

Defendant argues that the claims in Plaintiffs' Amended Complaint should be dismissed with prejudice because (1) Plaintiffs fail to state a plausible claim of deception; (2) Plaintiffs lack injury in fact to pursue their GBL claims for damages; and (3) Plaintiffs improperly seek to privately enforce federal and state regulations. *See* Defendant Whole Foods' Memorandum in Support of Its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Def. Mem."). None of these arguments can be the basis for dismissal of Plaintiffs' GBL claims or common law claims for damages, and Defendant's motion should be denied.

## FACTUAL BACKGROUND

As seen below, Defendant prominently states, "VANILLA" on the front of its Organic 365 Everyday Value brand soymilk (the "Product"). *See* Image 1 ("VANILLA" representation circled). See Am. Compl. at ¶¶ 1, 4.



Consumers want vanilla in vanilla flavored products to come from a real source, *i.e.*, from vanilla beans from the vanilla plant. *Id.* at ¶¶ 13, 85. The "VANILLA" representation on the Product caused consumers, like Plaintiffs, to believe that the Product does not contain artificial ingredients in the amounts that are present. *Id.* at ¶¶ 47-48. Consumers are accustomed to products labeled with "vanilla" – without qualifiers such as "flavored," "artificial flavors" or "with other natural flavors" – to mean that the vanilla flavor comes from the vanilla bean. *Id.* at ¶ 21. Plaintiffs thus reasonably believed that the "VANILLA" representation on the front label of the Product meant that the vanilla flavor was from the vanilla bean from the vanilla plant and not from artificial flavors from non-vanilla sources. *Id.* at ¶ 86.

2

Unfortunately for consumers, the "VANILLA" representation on the Product is false and misleading. Specifically, scientific testing of the Product revealed that the vanilla flavoring of the Product does not come exclusively or predominantly from the vanilla bean. *Id*. at ¶¶ 28-39.

Given the highly skewed ratios of vanillin to other vanilla compounds, the Product contains a trace or *de minimis* amount of real vanilla, which is not detectable by even advanced scientific means. *Id*. at ¶¶ 28-39. The Product also contains artificial vanillin, along with piperonal and maltol, synthetic flavors. *Id*. The ingredient list fails to tell consumers or Plaintiffs that the vanilla taste of the Product is predominantly from artificial flavors and not real vanilla from the vanilla bean. *Id.* at ¶¶ 84-86.

Plaintiff Burke and Plaintiff Lucky purchased the Product bearing the "VANILLA" statement on the front labeling. *Id.* at ¶¶ 68-69. They saw the "VANILLA" representation and relied on that representation in believing that the Product's vanilla flavor came only from the vanilla bean instead of artificial, non-vanilla flavors. *Id.* at ¶ 70. As a result of the misleading labeling at issue, the Product is sold at a premium price, as compared to similar competing products represented in a non-misleading way. *Id.* at ¶ 53, and the value of the Product purchased by Plaintiffs was materially less than its value as represented by Defendant. *Id.* at ¶ 85.

Plaintiff Burke and Plaintiff Lucky assert claims for violation of GBL §§ 349 and 350 *id.* at ¶¶ 81-88, and common law claims. *Id.* at ¶¶ 89-114, on behalf of a proposed class of similarly situated consumers who purchased the Product and who reside in New York. *Id.* at ¶ 72. Plaintiffs seek monetary and injunctive relief as well as expenses and reasonable attorneys' fees. *Id.* at 18 (Prayer for Relief, ¶¶ 3-5).

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("*Iqbal*").

"Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (*Twombly*). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. The court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013).

The "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).

## ARGUMENT

### I.    PLAINTIFFS HAVE PLAUSIBLY ALLEGED DECEPTION

Plaintiffs bring claims under GBL §§ 349 and 350, which New York's highest court has recognized are founded on the overarching belief that "[c]onsumers have the right to an honest market place where trust prevails between buyer and seller." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). "These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999). "The reach of these statutes 'provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State.'" *Id.*

"To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015).

To state a claim for false advertising or deceptive business practices under New York law, "a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). Whether a representation is likely to mislead a reasonable consumer "is generally a question of fact not suited for resolution at the motion to dismiss state." *Duran v. Henkel of America, Inc.*, __ F.Supp.3d __, 2020 WL 1503456, at *4 (S.D.N.Y. March 30, 2020) (listing cases in which motion to dismiss was denied); *see also Rivera v. Navient Solutions, LLC*, 2020 WL 4895698, at *7 (S.D.N.Y. August 19, 2020) ("a determination of whether a particular act or practice is misleading is not ordinarily appropriate for decision on a motion to dismiss").

Defendant asks this Court to rule as a matter of law that a reasonable Consumers understand that "vanilla" is a flavor designator of the soymilk, not an ingredient claim. However, this overlooks that an unqualified "flavor" claim *is* an ingredient claim, because it tells the purchaser that the Product's flavor is exclusively from the characterizing ingredient.

Plaintiffs have plausibly alleged Defendant's "VANILLA" representation on the front of the Product is likely to deceive reasonable consumers into believing the Product's vanilla flavor is derived predominantly and exclusively from vanilla beans. This is not the rare situation in which dismissal as a matter of law is appropriate.

A.    <u>Defendant Cannot Assert Truthfulness as a Defense for Alleged Deception</u>

Defendant argues Plaintiffs' allegations of deception are implausible because the Product may contain some modicum of real vanilla. Def. Mem. at 8 ("[T]he 365 Soymilk's front label is not misleading because the product contains vanilla extract."). Defendant essentially argues that its "VANILLA" claim is truthful. However, it is well-established that GBL §§ 349 and 350 prohibit not only marketing claims that are literally false, but claims that have the capacity "to mislead even reasonable consumers acting reasonably under the circumstances." *Boule v. Hutton*, 328 F.3d 84, 93 (2d Cir. 2003) (technically true statements are actionable under New York GBL §§ 349 and 350 if they are misleading). Thus, Defendant cannot defeat Plaintiffs' claim with a defense of technical accuracy.

The Second Circuit's decision in *Mantikas v. Kellogg Co.* is directly on point and governs here. In *Mantikas*, the district court dismissed a complaint that alleged false advertising and deceptive business practices under the GBL. *Mantikas*, 910 F.3d at 634, 635 n.1. The subject of the case was a cracker sold in boxes that bore on their front labels the words "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" in large letters, as well as the statement "Made with 5g [or 8g] of WHOLE GRAIN per serving." *Id.* at 634–36. The plaintiffs alleged the "WHOLE GRAIN"

6

representations led them to believe the product was made predominantly of whole grain, when in fact the grain content was predominantly enriched white flour. *Id.* at 634–35, 637. The defendant moved to dismiss, and the district court granted the motion. *Id.* at 636.

On appeal, the Second Circuit vacated the district court's order for reversible error and remanded. It held that the plaintiffs had plausibly alleged deception and the fact that the product was made with some whole grain and the ingredients list on the side of the box listed "enriched white flour" first in order of predominance before "whole wheat flour" were insufficient to dispel the plaintiffs' claim that the "WHOLE GRAIN" claims were deceptive. *Id.* at 637.

Here, as in *Mantikas*, the fact that the "VANILLA" statement may technically be accurate with respect to flavor or an ingredient does not make the statement unactionable as a matter of law. Plaintiffs have plausibly alleged that the "VANILLA" representation in the context of the front of the Product is likely to mislead reasonable consumers because the vanilla taste is predominantly derived from non-vanilla sources.

Defendant essentially asks this Court to rule contrary to the *Mantikas* decision by allowing Defendant to make a conspicuous, misleading front-label statement regarding an ingredient that Defendant chooses to highlight so long as the ingredient is in the Product in some minute amount. The Second Circuit warned that such a rule would open the door to "highly deceptive" practices:

> The rule . . . that, as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling [and] would validate highly deceptive marketing.

*Mantikas*, 910 F. 3d at 638.

The recent case, *Sharpe v. A & W Concentrate Company and Keurig Dr. Pepper Inc.*, __ F. Supp.3d __, No. 1:19-cv-00768 (BMC), 2020 WL 4931045 (E.D.N.Y. August 24, 2020), is directly on point.

At issue was the representation "Made with Aged Vanilla" made by the defendants on the front label of its root beer and cream sodas. The plaintiffs in that case claimed that "consumers interpret the defendants' representation to mean that the characterizing flavoring derives from the vanilla plant, not a cheap inferior substitute for the natural substance." *Id.*, 2020 WL 4931045 at *1. The defendants argued that a reasonable consumer cannot be misled because the products contain some real vanilla and are conspicuously labeled as being "Naturally and Artificially Flavored." *Id.*

The court rejected both arguments.

> [Plaintiffs] have adequately alleged that the "MADE WITH AGED VANILLA" representation on the front of defendants' packaging communicates to the reasonable consumer the false message that the vanilla flavoring comes from real vanilla, when in reality, the product contains no "aged vanilla" whatsoever. The complaint reiterates that, even if the products contain any aged vanilla, "it is in trace or de minimis amounts not detectable by advanced scientific means." Therefore, defendants' misleading message that the drink contains "aged vanilla" is not dispelled by the information that the beverages are "Naturally and Artificially Flavored," which fails to communicate that the quantity of the artificial flavoring far exceeds the quantity of natural vanilla.

*Id.*

Just as in *Sharpe*, Plaintiffs have alleged that the "VANILLA" representation on the front of Defendant's packaging communicates to the reasonable consumer the false message that the vanilla flavoring comes predominantly from real vanilla when in reality the quantity of non-vanilla and artificial flavoring from artificial, synthetic vanillin far exceeds the quantity of vanilla flavor from the vanilla bean.

### B. The Ingredient List on the Back of the Product Is Insufficient to Correct or Clarify the Misleading Statement on the Front of the Product

Defendant cannot defeat Plaintiffs' claims with a defense that the Product's ingredient list somehow dispels any ambiguity whether, and how much of, the vanilla taste is derived from the

vanilla bean. Def. Mem. at 8 ("Even if consumers somehow inferred from the 365 Soymilk label

that it was exclusively flavored with vanilla extract from vanilla beans, the product's ingredient

list would resolve any such confusion."). The Second Circuit's decision in *Mantikas v. Kellogg*

*Co.* is controlling and forecloses this argument. The Court of Appeals specifically rejected the

argument that disclosures on the ingredient list rendered allegations of deception implausible:

> We conclude that a reasonable consumer should not be expected to consult the
> Nutrition Facts panel on the side of the box to correct misleading information set
> forth in large bold type on the front of the box.

*Id.* at 637.

     The *Sharpe* decision again is on fours. The court rejected a similar argument made by the

defendant in that case:

> [T]o adequately review [the "Naturally and Artificially Flavored"]
> disclosure on some of the products, one must maneuver and rotate the bottle.
> If the Court in *Mantikas* emphasized that a consumer should not be expected
> to turn and consult the side of a box to correct misleading information set
> forth in large bold type on the front of the box, I see no reason why a
> consumer purchasing a bottle of soda should be expected to do the same.

*Sharpe*, 2020 WL 4931045, at *5. The Court found, "in some respects, this case presents a stronger

case of misrepresentation than in *Mantikas*" because the sodas at issue only disclosed "natural and

artificial flavors" on its ingredients list. *Id.* at *5. Thus, the presence of artificial vanilla flavoring

in the products "is never explicitly disclosed to consumers" in the ingredients list. "Rather, it took

advanced scientific testing to reveal this." *Id.* Thus, the Court concluded:

> After viewing the label of the products in context and accepting plaintiffs'
> allegations as true, I hold that plaintiffs have plausibly alleged that the
> "MADE WITH AGED VANILLA" representation – prominently displayed
> underneath the A&W logo and on front of the bottle or box, bolded and in
> all capital letters – falsely implies that any vanilla content derives
> predominantly from the vanilla plant, instead of its artificial and synthetic
> counterpart.

*Sharpe*, 2020 WL 4931045, at *5.

Similar to *Sharpe*, it took advanced scientific testing to ascertain that the Product contains artificial vanilla flavoring. Am. Compl. at ¶¶ 29-40. Plaintiffs allege that reasonable consumers cannot follow up or learn the truth that the "Product Contains non-vanilla artificial flavors, including vanillin from non-vanilla sources, from reading the Product's ingredient list because defendant labels this flavor as 'Organic Natural Flavor' and fails to provide clarification elsewhere on the Product." Am. Compl. at ¶ 48. *See also id.* at ¶ 86 ("The ingredient list declaration of 'organic natural flavor' fails to tell consumers and plaintiffs that the Product contains added vanillin, from non-vanilla sources, which is required to be designated as an artificial flavor on the ingredient list and make the front label disclose 'artificially flavored.'").

Following *Mantikas* and *Sharpe*, this Court should conclude that Plaintiffs have plausibly alleged deceptive business practices and false advertisement under GBL §§ 349 and 350.

C.      Defendant's Authorities are Inapposite Because They Involve Instances Where
        Labeling Purportedly "Cured" the Deception

Defendant's cites to several district court cases for the proposition that a "half-truth" front label claim cannot be deceptive as long as a product contains any amount of that front label ingredient. Def. Mem. at 7 citing *Sarr v. BEF Foods*, No. 18-cv-6409, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020) (dismissing claims where plaintiff alleged it was misleading to promote the presence of butter given the mashed potatoes contained more butter than non-butter vegetable oil ingredients); *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-16 (E.D.N.Y. July 26, 2019) (same) *but see Berger v. MFI Holding Corporation*, No. 17-cv-06728 (E.D.N.Y. Apr. 3, 2019) (refusing to dismiss plaintiff's claims that "made with real butter" and "fresh potatoes" were deceptive because mashed potatoes contained *less* butter than margarine); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d. 330, 341 (E.D.N.Y. 2018) (pre-*Mantikas* decision dismissing claim product was deceptively marketed as "cold-pressed"

10

because labeling did not say it was *only* cold-pressed); *Davis v. Hain Celestial Grp. Inc.*, 297 F. Supp. 3d 327 (E.D.N.Y. 2018) (same); *Melendez v. One Brands*, No. 18-cv-06650, 2020 WL 1283793, *6 (E.D.N.Y. Mar. 16, 2020) (finding product name of "One Bar" promoting one gram of sugar would not mislead reasonable consumers to expect product was low in calories since calories listed on nutrition facts).

Notwithstanding that Defendant's position is contrary to *Mantikas*, in none of Defendant's authorities was there any debate of *how much* of a particular ingredient was in the product, as these questions were answered by the ingredient lists and Nutrition Facts. In contrast, the Amended Complaint states that because the amount of flavoring components in vanilla extract is approximately 0.2%, "its contribution to the Product's vanilla taste is less than the front label would have consumers believe." Am. Compl. at ¶¶ 37, 39.

## II.   PLAINTIFFS ESTABLISHED SUFFICIENT INJURY TO PURSUE THEIR GBL CLAIMS FOR DAMAGES

A GBL action "is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (internal citations omitted). Moreover, a plaintiff need not plead or allege reliance. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015).

A plaintiff needs to show only that the material deceptive act caused the injury. *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (2013); *Oswego*, 85 N.Y.2d at 26. Defendant argues Plaintiffs' price premium allegations do not constitute an injury. Def. Mem. at 17. This argument is unavailing, as explained by the Court in a recent decision in this District, *Duran v. Henkel of America, Inc.*, where the Court explained:

> To allege injury under a price premium theory, a plaintiff must allege not only that defendants charged a price premium, but also that there is a

11

> connection between the misrepresentation and any harm from, or failure of, the product. This connection often takes the following form: A plaintiff alleges that a company marketed a product as having a unique quality, that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality.

*Duran*, __ F.Supp.3d __, 2020 WL 1503456 (S.D.N.Y. March 30, 2020), at *8 (internal quotations and citation omitted).

Here, Plaintiffs have done just that. They alleged that Defendant's "VANILLA" representation led them to believe that "the Product's flavor contained only vanilla flavoring from vanilla beans and was not enhanced by non-vanilla flavors including artificial flavors." Am. Compl. at ¶ 67. Plaintiffs alleged that "[t]he amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect [that] non-vanilla, artificial flavors where a product is labeled 'vanilla' without more." *Id.* at ¶ 85.

Plaintiffs alleged that "[t]he value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant." *Id.* at ¶¶ 75, 77 ("As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.99 for cartons of 32 OZ and $5.49 for 64 OZ, excluding tax, compared to other similar products represented in a non-misleading way."

Finally, Plaintiffs alleged, "Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them." *Id.* at ¶ 52.

Plaintiffs have unquestionably alleged injury sufficient to maintain their GBL claims. *See, e.g.*, *Duran*, 2020 WL 1503456, at *8 (finding allegations sufficient for price premium theory of injury); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480–82 (S.D.N.Y. 2014) (the plaintiff merely alleging he paid a premium price without making any

other factual allegations was sufficient to properly allege injury); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489, 2016 WL 4367991, at *7 (S.D.N.Y. 2016) ("the law is clear that economic injury – including that caused by paying a premium – is sufficient to establish injury for standing purposes."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) ("A plaintiff adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations.").

### III.   PLAINTIFFS' GBL CLAIMS ARE BASED ON CONDUCT THAT IS DECEPTIVE INDEPENDENT OF FEDERAL OR STATE REGULATIONS

Defendant's argument, that Plaintiffs assert an improper private right of action for violations of FDA regulations, can be dispensed with easily. Def. Mem. at 12-15 citing *Patane v. Nestle N. Am., Inc.*, 314 F. Supp. 3d 375, 387-88 (D. Conn. 2018) ("*Patane I*") (dismissing GBL claims based solely on violation of FDA regulations).

Plaintiffs allege that Defendant's labeling constitutes deceptive business practices under GBL § 349 and false advertising under GBL § 350 because the "VANILLA" labeling misrepresents that the Product's vanilla taste is from vanilla beans when most, if not all, of the is from non-vanilla and artificial sources. *See* Am. Compl. at ¶¶ 81-88.

Plaintiffs alleged that the Product contained "less flavoring from vanilla beans than consumers expect based on the front label and ingredient list" and "was not enhanced by non-vanilla flavors including artificial flavors." Am. Compl. at ¶¶ 4, 67. These are "'free-standing claim[s] of deceptiveness under GBL § 349 that happens to overlap with a possible claim' under another statute that is not independently actionable." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005).

A.      Plaintiffs Do Not Rely on Violations of FDA Regulations for their GBL Claims

Defendant characterizes the Amended Complaint as "riddled" with citations to the FDCA. Def. Mem. at 12 quoting 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). Defendant claims that Plaintiffs are attempting to enforce the FDCA. Def. Mem. at 12 citing *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (dismissing claims where it was alleged that "PDK's products are sold without proper FDA approval").

In the regulatory context, the doctrine against private enforcement of FDA regulations applies where a party asserts a "fraud-on-the-FDA claim" against another, as opposed to standard, consumer-directed misrepresentations. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) (upholding principle that private plaintiff cannot interfere in comprehensive regulatory process); *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010) ("The misrepresentation at issue in *Buckman* was not made to the plaintiff — or consumers at large — but to the FDA itself.")

Courts have consistently distinguished claims which "exist[ed] solely by virtue of the FDCA disclosure requirement" and those that are based on "violat[ions of] the FDCA but sound[s] in traditional principles of state [consumer protection] law and would give rise to recovery even had the FDCA never been enacted." *Bayer Corp.*, 701 F. Supp. 2d at 375.

The Amended Complaint is replete with allegations that the Product's representations are actionable under GBL §§ 349-350 because they mislead consumers. Am. Compl. At ¶ 85 ("The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product").

Merely because "any particular state law standard is not independently actionable or directly enforceable is neither grounds to reach a *non sequitur* conclusion that the standard must

14

be preempted by federal law, nor to conclude that the standard has no legal weight as a state law duty that is independent of federal law." *Patane v. Nestlé Waters North America, Inc.*, 369 F. Supp. 3d 382, 394 (D. Conn. 2019) ("*Patane II*"); *Quiroz v. Beaverton Foods, Inc.*,  No. 17-cv-7348, 2019 WL 1473088, at *6 (E.D.N.Y. Mar. 31, 2019) (no preemption where plaintiff relied on "statutory definition [of preservative] to support her contention that  citric acid is a preservative, but her claim is not premised on a violation of federal labeling requirements.").

      B.      Defendant's Assertion that the Regulations Have No Weight is Without Merit

Defendant is incredulous that Plaintiffs' "expectations are set by a byzantine web of labeling regulations." Def. Mem. at 14. This is false, as Plaintiffs have not alleged they were aware of the regulations in the Amended Complaint at the point of purchase.

Because vanilla flavoring is subject to FDA standards and regulations, consumers are particularly susceptible to "vanilla" claims without any qualifiers, as suggesting that a product is flavored only with vanilla beans. Am. Comp. at ¶ at 19 ("To prevent this [consumer] deception, vanilla became the only flavor to have a standard of identity"); *see e.g.*, *Dumont v. Reilly Food Co.,* 934 F.3d 35, 42 (1st Cir. 2019) (reversing district court and holding that in case involving a hazelnut creamer that "FDCA requirements effectively established custom and practice in the industry. Accordingly, it may be that a consumer's experience with that custom and practice primes her to infer from the absence of a flavoring disclosure that the product gets its characterizing nutty flavor from the real nut."); *Am. Home Prods. Corp. v. Fed. Trade Comm'n*, 695 F.2d 681, 697-98 (3d Cir.1982) (recognizing "[p]ervasive government regulation [of drugs], and consumer expectations about such regulation, lend [drug] claims all the more power to mislead").

In claiming that "Plaintiffs have no factual basis to allege that the 'organic natural flavors' listed in 365 Soymilk include artificial vanilla flavors," Defendant contends:

The standards of identity Plaintiffs reference at 21 C.F.R. section 169.175-182 (FAC ¶19) are inapplicable. Those standards apply to a product such as the vanilla extract available in your grocer's spice aisle, but not to the listing of vanilla as a flavoring in another food product such as soymilk.

Def. Mem. at 16.

Defendant provides no factual rebuttal to the interpretations espoused by the flavor industry, through The Flavor and Extract Manufacturers Association of the United States ("FEMA") and the FDA. Am. Compl. at ¶ 42 ("The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation" permitted by 21 C.F.R. § 101.22) citing Hallagan and Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43, Apr. 25, 2018 at 34 ("The federal standard of identity for vanilla flavorings at 21 CFR Section 169 applies to both the flavorings sold directly to consumers and to food manufacturers."), 42 ("It is important to emphasize that these [at 21 CFR Sections 101.22(i)(1), (2) and (3)] regulations apply only to foods that are not subject to a federal standard of identity."); Am. Compl. at ¶ 46 citing 2016 FDA Letter ("Defendant's Vanilla Soymilk, 'containing vanillin derived from a non vanilla bean source needs to be labeled as artificially flavored [because] the food is characterized/labeled as vanilla flavored.'").

The Amended Complaint plausibly alleges the Product's "organic natural flavor" contains vanillin, *in addition to* "organic vanilla extract. Am. Compl. at ¶¶ 29, 44. Since the Product "contain[s] vanillin derived from a non vanilla bean source," "the ingredient list is required to state 'contains vanillin, an artificial flavor (or flavoring)'" and the front label must state "artificially flavored." Am. Compl. at ¶¶ 44, 46 citing 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract").

Defendant claims this "proposed remedy" "is divorced from the commonsense expectations of reasonable consumers." Def. Mem. at 15, fn 8. Yet reasonable consumers have

16

always known vanillin as an artificial (vanilla) flavor, and Plaintiffs' highlighting of this is not "twisted logic" but puts consumers on fair notice that the Product's vanilla taste is predominantly provided by sources other than vanilla beans. Am. Compl. at ¶ 37.

C.   Defendant's Authorities Address "Technical Violations"

Defendant's likens the allegations of the Amended Complaint to a "technical violation of the FDCA's regulations." Def. Mem. at 14. However, Plaintiffs allege that "today's consumers 'want real vanilla, not imitation [vanilla] flavoring," and that "Flavoring ingredients, especially for products labeled as 'vanilla,' are typically the most valuable component of a food." Am. Comp. at ¶¶ 10, 15.

Defendant's authorities are distinguishable, because plaintiffs there alleged misleading representations of product quantity despite the legally required "net weight" disclosure. After finding the claims did not mislead reasonable consumers, the courts concluded that *even if* the defendants failed to comply with a technical labeling requirement, this was not independently actionable as a basis for a GBL claim. Def. Mem. at 12-14 citing *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) (dismissal of GBL § 349 claim because it was not plausible that the product's net weight would only refer to the shrimp in shrimp cocktail); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018) (dismissing GBL claims based exclusively on the presence of non-functional slack-fill because the products "clearly disclosed accurate net weight and/or the total product count."); *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1086 (C.D. Cal 2017) ("*Trader Joe's*") (New York GBL claims precluded where the basis of the claim is entirely on violation of federal "pressed weight" regulations); *see also Solak v. Hain Celestial Grp., Inc.*, No. 3:17-cv-0704, 2018 U.S. Dist. LEXIS 64270, at *31 (N.D.N.Y. Apr. 17, 2018) (dismissing complaint because no reasonable consumer

could expect "veggie sticks" to have similar health and nutritional value to the "garden grown potatoes" and "ripe vegetables" depicted on the front label).

IV. **DEFENDANT'S FACTUAL ATTACK ON THE AMENDED COMPLAINT'S TESTING AND SURVEY ALLEGATIONS DISREGARDS THE COURT'S ROLE ON A MOTION TO DISMISS**

Plaintiffs' allegations regarding the consumer survey and testing of the Product are factual assertions, which must be taken as true as with all other factual allegations in the Amended Complaint on its motion to dismiss. Def. Mem. at 9-11.

Any weighing of evidence is inappropriate on a motion to dismiss. *Doe v. Columbia University*, 831 F.3d 46, 59 (2d Cir. 2016) ("The role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed."); *Jones v. Halstead Management Co., LLC*, 81 F. Supp. 3d 324, 335 (S.D.N.Y. 2015) (refusing to "assay the weight of evidence" before the parties engage in discovery).

The Amended Complaint paints a clear picture of vanilla usage and labeling, stating that "[c]onsumers expect the Product's taste to only come from vanilla beans because they are accustomed to labels with terms such as 'flavored,' 'artificial flavors,' and 'with other natural flavors.'" Am. Compl. at ¶ 21. Given that the flavor industry trade group highlighted current deceptive labeling practices, the consumer survey results and the strong inferences of added vanillin shown through the testing, these issues "raise a right to relief above the speculative level," and are sufficient to "nudge" the allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548, 555.Am. Compl. at ¶¶ 23-24, 40.

A. <u>Plaintiff's Survey Results Support a Reasonable Conclusion</u>

"[W]hen consumer survey data is incorporated into a complaint the Court must presume its truth on a motion to dismiss, even if a defendant has raised colorable arguments as to the

18

reliability of the survey methodology." *Shalikar v. Asahi Beer U.S.A., Inc.*, No. 17–cv-02713, 2017 WL 9362139, at *7 (C.D. Cal. 2017)

Here, Plaintiffs have sufficiently alleged actionable deception based on their first-hand experience. However, they have bolstered their allegations with survey evidence. Plaintiffs have alleged that in a survey conducted in May of 2020 of 423 consumers, who were shown the Product's front label, over 64% of respondents believed the origin of the vanilla taste comes from the vanilla plant. Am. Compl. Exhibit A. This supports Plaintiffs' allegations that a reasonable consumers, like Plaintiffs, were misled. Defendant's contentions to the contrary are misplaced on a motion to dismiss. *See* Def. Mem. at 11-12.

Just as the consumers in *Sharpe* "believe[d] that the statement 'MADE WITH AGED VANILLA' meant that vanilla extract formed the characterizing flavor of the [root beer and cream soda] products," consumers here had similar expectations. *Sharpe*, 2020 WL 4931045 at 4, 12 ("This determination is further bolstered by the persuasive extrinsic evidence that the overwhelming percentage of consumers share this misconception"); Am. Compl. at ¶ 23-24.

   B.   Defendant's Attacks on Testing Method are Misplaced

Defendant claims "Plaintiffs' GC-MS analysis is flawed and unreliable." Def. Mem. at 10 citing *Steele v. Wegmans Food Markets, Inc.*, 2020 U.S. Dist. LEXIS 123637 at *4-5 (S.D.N.Y. July 14, 2020) (dismissing complaint because plaintiff failed to prove a product labeled as "vanilla flavored" lacked any vanilla).

Unlike *Steele*, Plaintiffs do not allege the Product lacks *any* vanilla, but that it contains less than consumers expect, and the vanilla taste comes from artificial vanilla flavors like vanillin, piperonal and maltol. Am. Compl. at ¶¶ 28-39. This was the conclusion in *Sharpe*, 2020 WL 4931045 ("Testing disclosed that the predominant, if not exclusive, source of the vanilla flavor derives from an artificial, synthetic ingredient – ethyl vanillin."); *see also Vizcarra v. Unilever*

*United States, Inc.*, No. 4:20-cv-02777, 2020 WL 4016810, at *1 (N.D. Cal. July 16, 2020) (denying motion to dismiss where plaintiff's analytical testing showed the ice cream did not contain flavor exclusively from vanilla plant).

Defendant contends that the lab analysis should have "specifically test[ed] for maltol, piperonal, and vanillin" instead of all flavor compounds in the Product. Def. Mem. at 10. However, GC-MS is a method of targeted and non-targeted detection, capable of identifying "the wider range of more volatile compounds that are responsible for the bulk of vanilla's flavour, including many unknown compounds." The benefit of such an approach is the "focus on signals generated from analytical instruments" and comparison of the results with a known authentic sample.[1]

That Defendant finds it "unclear how a GS-MS test is able to discern between 365 Soymilk's 'flavors' and other ingredients, and whether such flavors are able to survive the barrage of transformations" is further support for denying its motion to dismiss, since it cannot articulate a precise objection on this point. Def. Mem. at 11.

Though Defendant cites *Steele's* admonition that Plaintiffs test "specifically for the presence of the particular chemical markers," the Amended Complaint lacks any mention of "markers." Def. Mem. at 10. Instead, Plaintiffs demonstrate the "an abnormal excess of vanillin relative to the profile of minor components in a vanilla preparation," and compare this ratio with a sample of vanilla extract. Am. Compl. at ¶¶ 35-36.

Next, Defendant laments "no control experiment was conducted on a sample with known and agreed flavor composition." Def. Mem. at 10. In an ideal setting, Defendant would have provided a sample of the Product's flavor to Plaintiffs, but the *Twombly* plausibility standard recognizes the challenges faced by plaintiffs at the pleading stage, because in many instances, "the

---

[1] Boyan Gao, et al. "Opportunities and challenges using non-targeted methods for food fraud detection." *Journal of agricultural and food chemistry* 67.31 (2019): 8425-8430.

facts are peculiarly within the possession and control of the defendant," such as the composition of its "Organic Natural Flavors." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

"At this stage, the court is compelled to assume the truth of the plaintiff's factual allegations and draw all reasonable inferences in his favor." *See Sharpe*, 2020 WL 4931045, at *2, *5 (accepting as true the plaintiffs' allegation that "[s]cientific testing of the products by an independent laboratory revealed that the vanilla flavoring of the products does not come from the vanilla plant").

## V.   PLAINTIFFS PROPERLY ALLEGED COMMON LAW CLAIMS

### A.   Plaintiffs Properly Pled Negligent Representation Claims

In New York, a claim for negligent misrepresentation requires (1) the existence of a special or privity-like relationship; (2) that the information was incorrect; and (3) reasonable reliance on the information. *Mandarin v. Wildenstein*, 16 N.Y.3d 181, 173 (2011) citing *J.A.O.Acquisition Corp. v. Stavitsky*, 8 NY3d 144, 148 (2007).

Defendant claims there existed no special relationship, but disregards that the relationship approached that of privity because: "(1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; (2) a known party or parties rely on this statement in furtherance of that purpose; and (3) there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Greene v. Gerber Products Co.*, 262 F. Supp 3d 38, 75 (E.D.N.Y. 2017).

Negligent misrepresentation may still properly be pled where the plaintiff "emphatically" alleges (1) the speaker held or appeared to hold unique or special expertise and (2) the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Greene* F.Supp 3d at 75. Plaintiffs adequately allege that Defendant held such expertise and knew consumers would rely upon their representations. Am. Comp. ¶ 94.

B.    Plaintiffs Properly Alleged Breach of Express Warranty Claim

To state a claim for breach of an express warranty, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) a buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg*, 8 F.Supp 3d at 482.

Plaintiffs alleged that (1) Defendant expressly warranted that their Product's vanilla taste was from real vanilla instead of artificial vanilla; (2) Defendant breached the express warranty on because the Product had at best *de minimis* vanilla, boosted by vanillin; (3) Defendant knew the purpose for which its representations were to be used – to consumers seeking a product with vanilla taste only from vanilla beans; (4) Defendant's description did not conform due to added vanillin, piperonal and maltol and (5) Plaintiffs purchased the Product based upon these representations. Am. Compl. at ¶¶ 98-107.

Defendant represents that its Product is flavored exclusively or predominantly from vanilla beans from the vanilla plant, when its flavor is mainly from vanillin. Am. Compl. at ¶¶ 4-5 ("although the characterizing flavor is represented as vanilla, it contains less flavoring from vanilla beans than consumers expect based on the front label ingredient list."). *Goldemberg*, 8 F.Supp 3d at 482-83 (denying motion to dismiss express warranty claims based on "Active Naturals" product containing mostly synthetic ingredients)

C.    Plaintiffs Properly Pled Breach of Implied Warranty Claim

In New York, an implied warranty of merchantability is governed by §2-314 of the New York Uniform Commercial Code ("UCC"). To be merchantable, goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality of such goods. *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 527 (E.D.N.Y. 2012).

Though Plaintiffs may "fail to allege that the 365 Soymilk they purchased was unfit for human consumption," it was not "capable of passing without objection in the trade" because it was not primarily flavored with real vanilla.  Def. Mem. at 22; Am. Compl. ¶¶ 4-5, 101.

### D.    Plaintiffs Properly Pled Fraud Claims

Defendant argues that Plaintiffs' fraud allegations fail to be pled with the required specificity pursuant to Fed. R. Civ. P. 9(b). Def. Mem. at 22.  To satisfy Rule 9(b), "the complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 171 (2d Cir. 2015).

Defendant was the speaker of the representations and omissions with respect to the amount and proportion of the real vanilla in the Product. Am. Compl. at ¶¶ 1-4, 108-112. The statements and omissions were fraudulent because the Product did not disclose the small amount of vanilla was boosted by vanillin, piperonal and maltol. Am. Compl. ¶ 45. These allegations meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

### E.    Plaintiffs' Claims of Unjust Enrichment are Not Duplicative

Defendant argues that the Court should dismiss Plaintiffs' unjust enrichment claim because it is duplicative. Def. Mem. at 23-24. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying dismissal of unjust enrichment because "it is well-settled that parties may plead in the alternative").

23

To the extent that this Court finds that Plaintiffs do not state claims pursuant to the GBL or common law claims, the Court may hold that Plaintiffs' unjust enrichment claims are viable. Thus, because questions of fact remain as to all of Plaintiffs' claims, dismissal of the unjust enrichment claim at is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage).

## VI.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiffs have standing to pursue injunctive relief because they are unable to rely on the Product's labels in the future, which causes them to avoid purchasing the Product even though they would like to. This constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000).

Numerous courts have concluded that the inability to rely on the labels in the future, as alleged in the Amended Complaint, constitutes a threat of harm and that to hold otherwise would eviscerate the New York consumer protection statute. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief'") *quoting Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2013 WL 7044866, at *2–3, *14–15, n.23 (E.D.N.Y. July 18, 2013); *Jackson-Mau v. Walgreen Co.*, No. 18-cv-04868, 2019 WL 5653757, at *3 (E.D.N.Y. Oct. 31, 2019) (finding plaintiff could seek injunctive relief because her complaint stated she would purchase the product "again if she could be sure that the bottle actually contains what it is supposed to contain."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 at 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is

24

corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Defendant incorrectly claims that a recent Second Circuit opinion stymies Plaintiffs' request for injunctive relief. *Berni v. Barilla S.p.A.*, *et al. v. Schulman*, No. 19-cv-1921, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020). The court in *Berni* correctly recognized that for purposes of class certification, injunctive relief addressed to past conduct is insufficient to meet the requirements of Rule 23(b)(2). Plaintiffs here, as proposed class representatives, seek monetary damages *in addition to* injunctive relief. In *Berni*, millions of other class members would have their rights extinguished in support of a settlement which granted them fictitious relief in the form of a "fill-line." This case, at the pleading stage, does not require a conclusion which denies any injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

Date:   September 30, 2020

Respectfully submitted,

Sheehan & Associates, P.C.

/s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3409
Tel: (516) 303-0552
spencer@spencersheehan.com

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Tel: (212) 643-0500
mreese@reesellp.com

1:19-cv-05913-CBA-SMG
United States District Court
Eastern District of New York

Walleta Burke, Sharon Lucky individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

Whole Foods Market Group, Inc.,

Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date:   September 30, 2020

/s/Spencer Sheehan
Spencer Sheehan

**Certificate of Service**

I certify that on September 30, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan